Alfred FRANCIA and Gennaro Ferrara, Plaintiffs-Appellees and Cross-Appellants,

v.

Patrick M. WHITE, Individually and as Sheriff of Sandoval County, Defendant-Appellant and Cross-Appellee.

Nos. 77–1821, 77–1822.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 29, 1978.

Decided March 14, 1979.

Raymond W. Schowers of Sutin, Thayer & Browne, Albuquerque, N. M., for plaintiffs-appellees and cross-appellants.

Louis E. Valencia, Bernalillo, N. M. (Warren O. F. Harris, Albuquerque, N. M., on brief), for defendant-appellant and cross-appellee.

Before SETH, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a § 1983 civil rights action in which the plaintiffs, who were deputy sheriffs in Sandoval County, New Mexico, allege that they were terminated from their employment by the defendant, who was elected sheriff in November 1976; that the reason for their termination was that he was a Republican and that they were Democrats; that each of them had supported the defendant's Democratic opponent in the November 2, 1976 general election. Plaintiffs asked the court to enjoin the defendant from conditioning employment in the sheriff's office upon the plaintiffs' past, present or future political support and loyalty or allegiance to the Republican Party. The plaintiffs also asked the court to award damages, compensatory and exemplary.

Defendant in his answer denied all of the allegations, and particularly those that the plaintiffs were terminated because they were Democrats rather than Republicans, and because of their having actively supported the defendant's Democratic opponent for Sandoval County Sheriff. In addition, the defendant asks that the suit be dismissed because of the plaintiffs' failure to allege that the sheriff was acting under

color of state law or took state action when he terminated them. Moreover, the defendant maintains that the plaintiffs had not been issued commissions on account of political allegiance, but, rather, for other reasons than their political party affiliations. and their active support of the opponent. Defendant asserts also that he acted in good faith and that at no time did he deprive plaintiffs of their constitutional rights.

Trial was had on June 30, 1977, before Judge Vearle Payne, who, after a trial to the court, asked for briefs, and following this had it under advisement for a period of time. On August 5, 1977, he issued findings of fact and conclusions of law.

The defendant-appellee, as cross-appellant, has taken an appeal from that part of the judgment which ordered reinstatement of plaintiffs within 30 days. He appeals also the part of the judgment that he must adjust his budget so as to comply with the judgment and, further, he appeals the requirement that plaintiffs have to be returned to their previous rank. The money judgment imposed required the appellant to pay all wages lost, accruing at the rate of $700 per month, from the date of termination, together with attorneys' fees and reasonable costs and expenses. This is appealed also.

The evidence at the trial showed that the plaintiff Francia had written a letter to the editor of a local newspaper urging the election of the opponent of defendant-appellee. Ferrara had had nothing to do with the writing of the letter, but had been active in the campaign against the defendant. After the election, the plaintiffs called the defendant for the purpose of meeting with him and ascertaining what their future was to be. The defendant then mentioned the letter that had been written by Francia and accused Ferrara of having written it. He refused to talk to Ferrara, but later on was persuaded to talk to both of them.

At the trial evidence was adduced showing that the parties had met and that during this meeting defendant had told them if he did not retain them it would be because of their political affiliations. Defendant denied making such a statement.

Other witnesses testified that the defendant had said that he was not going to rehire them and that it was because of their political affiliations. The fact was that they were not rehired, and at a meeting of the Republican Club defendant was asked why he had not retained the two plaintiffs. He responded that he wanted people who were loyal to him.

The evidence also showed that defendant was interviewed by a newspaper reporter as to why he had not rehired the two plaintiffs, and he said that he had not done so because of their political support of Carlos Pino. He was asked whether he had denied them employment because of their political affiliations and his response was that the reporter had said that, not he. The reporter said that White had told him to check the back issues of the paper to find an answer as to how he knew that they were not loyal to him.

One witness testified that he was the Democratic Ward Chairman and that he had approached White and recommended that he not keep the plaintiffs as deputies. The sheriff said that he considered that in determining that he would not retain them.

The trial court ruled generally in favor of the plaintiffs, finding that they were fired as a result of their political affiliations and that this constituted a violation of their civil rights. The judge also held that there was no immunity from suit as it applied to the case. As to the constitutional provisions that had been violated, the court said that the plaintiffs' First and Fourteenth Amendment rights had been infringed. The trial court made detailed findings of fact to establish that the firing was the result of political considerations. The court was of the opinion that the plaintiffs had a right to exercise freedom of speech and that the defendant did not have a right to fire them on this account.

Although the appeal is by the plaintiffs, the single issue that is presented to them is · their contention that the attorneys' fees

awarded were insufficient. The fee that was given by the court was $400. The main appeal is that of the defendant-appellee, who has filed a cross-appeal raising the points which have been briefly mentioned above.

Nevertheless, the order of discussion here will be, first, a consideration of the issue of attorneys' fees and, secondly, the several contentions of the defendant-appellee will be considered.

## I.

In 1976, Congress passed the Civil Rights Attorneys' Fee Awards Act of 1976, 42 U.S.C. § 1988, as amended. This provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

At trial the plaintiffs did not introduce independent evidence as to the value of the legal services rendered. It was not until the court had entered a judgment awarding $400 in attorneys' fees that the plaintiffs-appellants filed a motion to reconsider. To this was attached a copy of the time sheets applicable to the preparation and the trial of this case. It showed that a total of 133.75 hours were spent in the endeavor.

The charges that are shown on the time sheets range from $17.50 for paralegals to various sums ranging from $32.00 and up for members of the firm. The total amount charged in the sheets was $3,343.27. Notwithstanding this offer of the time sheets and amounts, the trial court refused to award any amount other than the $400 which it had given in connection with the adjudication of liability.

It is contended that it was an abuse of discretion to make such a nominal award, especially in view of the statement offered in support of the motion to reconsider, which detailed the amount of time and the fact that seven different lawyers and paralegals participated in the preparation and trial.

The Act contemplates that compensation should be awarded in view of the fact that this is a public law or private Attorney General type of case which, as a matter of equity, justifies the award. *See Bond v. Stanton*, 555 F.2d 172, 175 (7th Cir. 1977). This was the thinking of Congress when it enacted this measure following the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which case held that Congress and not the courts should define the areas in which attorneys' fees should be allowed. Before this decision the courts had been carving out their own attorneys' fees remedies based upon the nature of the action. The Congress was thus seeking to fill in the gap that had been created by the *Alyeska* case.[1]

---

1. The Senate Report of the bill contains pertinent statements of purpose which are as follows:

> This amendment to the Civil Rights Act of 1866, Revised Statutes, Section 722, gives the Federal courts discretion to award attorneys' fees to prevailing parties in suits brought to enforce the civil rights acts which Congress has passed since 1866. The purpose of this amendment is to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 [95 S.Ct. 1612, 44

L.Ed.2d 141] (1975), and to achieve consistency in our civil rights laws.

> \* \* \* \* \* \*

> The purpose and effect of S. 2278 are simple—it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. S. 2278 follows the language of Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k) and section 402 of the Voting Rights Act Amendments of 1975, 42 U.S.C. § 1973*l*(e). All of these civil rights laws

There is no necessity for this court to dwell on the legislative history because it is plainly recorded and the Act and its purpose are clearly shown to have contemplated a reasonable attorney's fee. If one gives effect to the time sheets and concludes that the 133.75 hours are an accurate statement in the absence of any other evidence, it would have to be determined that the $400 fee would measure out to $3.00 per hour. This cannot be considered a reasonable fee and for that reason the award is at odds with the Act of Congress.

It is, of course, impossible for this court on review to fix an attorney's fee with any degree of accuracy, Evans v. Sheraton Park Hotel, 164 U.S.App.D.C. 86, 97, 503 F.2d 177, 188 (1974), and with that in mind we must remand the case to the district court with directions to hear any additional evidence necessary to ascertainment of reasonableness of the fee to be awarded and act in accordance with that evidence.

Specific criteria have been enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). These criteria are reported in an appendix to this opinion. We are not saying that all of these need be considered. We simply commend them to the trial court for its use in arriving at a fair and reasonable judgment.

## II.

■ The next question is whether there is evidence in support of the trial court's finding that plaintiffs were terminated solely because of their political affiliations. It is well established that the courts of appeal must accept findings of fact made by the trial court unless clearly erroneous. Dowell v. United States, 553 F.2d 1233 (10th Cir. 1977); Castillo v. United States, 552 F.2d 1385 (10th Cir. 1977). We hold

that this finding was not clearly erroneous; that there was sufficient evidence to support it. We are mindful that all reasonable inferences in support of the trial court's findings are to be indulged. Also fundamental is the principle that an employee is not to be discharged from a job which he is satisfactorily performing solely on the basis of his political beliefs. Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

It should be pointed out that these plaintiffs were serving in non-policy-making, non-confidential positions. Their job was to enforce or execute the law. Also, they were adequately performing their duties. The denial of continued employment was shown to have been strictly on a political basis. Perry v. Sindermann held that a teacher could not be fired for exercising First Amendment rights. There, the plaintiff, a college professor, had been denied renewal of his contract due to his political activities. The case at bar is plainly within the scope of Elrod, supra. Inasmuch then as the plaintiffs were exercising rights which were protected by the First and Fourteenth Amendments, their being fired on this ground was unlawful and the trial court was correct in its evaluation of the evidence and in its finding and conclusion.

The fact that the number of employees in the Sandoval County Sheriff's Office is relatively small does not provide an adequate state interest for the action here in question.

## III.

■ The trial court ruled that the defendant has failed to sustain his legal bur-

depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court. S.Rep.No.94–1011, 94th Cong., 2d Sess. (1976), reprinted in [1976] U.S. Code Cong. & Admin. News, p. 5908.

den of proof that he was entitled to immunities. Defendant claims that he has demonstrated that he acted in his official capacity without malice and should therefore not be held liable for his acts against the plaintiffs. The immunity rule has not been defined in terms as broad as the defendant would have us embrace. The applicable test is set forth in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). There the Supreme Court in setting forth the existence of qualified immunity said:

> The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. To be entitled to a special exemption from the categorical remedial language of § 1983 . . . a school board member . . . must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges . . . .
> Therefore . . . we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.

420 U.S. at 321–22, 95 S.Ct. at 1001.

*Smith v. Losee*, 485 F.2d 334 (10th Cir. 1973), *cert. denied* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974), said that qualified immunity is a defense when the evidence shows that the defendant, when he acted, did so in the exercise of discretion vested by state law in good faith, without malice and when the facts before the official showed a valid reason or reasons for his action. The defense is available, so it was said, even if an unconstitutional reason may have been one of the reasons for the official's action. *Id.* at 344.

In *Jackson v. Kelly*, 557 F.2d 735 (10th Cir. 1977), it was ruled that the burden of establishing a defense is on the defendant, once plaintiff meets his burden to show that constitutionally protected conduct was a motivating or substantial factor in defendant's action. The plaintiffs here satisfied their burden when they showed that they were terminated as a result of supporting the opposing candidate. The burden then shifted to defendant to show that the termination of the plaintiffs resulted from a good faith analysis and that the plaintiffs would have been terminated regardless of their exercise of First Amendment rights. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The defendant has not shown that he acted in good faith reliance on a state statute.

Finally, we are of the opinion that the immunity does not apply. It has not been shown to have been activated by defendant and therefore there exists no basis for applying it.

IV.

The fact that N.M.Stat.Ann. § 15–40–9.1 (1953) allows the sheriff to exercise a broad discretion in discharging deputies does not and cannot justify his invasion of the plaintiffs' constitutional rights by firing them for exercising these rights. We do not here seek to interfere with the sheriff's discretion. In upholding this judgment we do so because the conclusion that the plaintiffs were terminated as a result of their having exercised their constitutional rights is fully supported by the evidence.

With the exception then of the award of the attorneys' fees, the judgment of the district court is affirmed. The cause is remanded to the district court for the sole purpose of reconsidering the award of attorneys' fees.

APPENDIX

The specific criteria which have been enunciated in *Johnson v. Georgia Highway*

*Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) are shown below. There is commentary in the body of the opinion as to each of these guidelines.

1. The time and labor required.
2. The novelty and difficulty of the questions.
3. The skill requisite to perform the legal service properly.
4. The preclusion of other employment by the attorney due to acceptance of the case.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or the circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation, and ability of the attorney.
10. The "undesirability" of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.