Bobby BATTLE et al., a Class Action, Plaintiffs-Appellants,

United States of America, Plaintiff-Intervenor, Appellant,

v.

Park ANDERSON et al., Defendants-Appellees.

Bobby BATTLE et al., a Class Action, Plaintiffs-Appellees,

United States of America, Plaintiff-Intervenor, Appellee,

v.

STATE BOARD OF CORRECTIONS, Frank E. Carey, Jr., President; Leroy W. Kirk, Patricia Montgomery, Gary M. Cook, Chester T. Curtin, Seth Millington, William Thompson, as members, and their successors, Defendants-Appellants.

Bobby BATTLE, Plaintiff-Appellee,

United States of America, Plaintiff-Intervenor, Appellee,

v.

Park J. ANDERSON, Warden, Oklahoma State Penitentiary; Leo McCracken, Director, Department of Corrections, State of Oklahoma; Roy Sprinkler, Deputy Director of Institutions; Sam C. Johnston, Deputy Warden, Oklahoma State Penitentiary; Captain Black, Correctional Officer, Oklahoma State Penitentiary, Defendants-Appellants.

Nos. 79–1709, 78–1318 and 78–1889.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 27, 1979.

Decided Jan. 21, 1980.

Louis W. Bullock of Chapel, Wilkinson, Riggs, Abney & Keefer, Tulsa, Okla. (American Civil Liberties Union of Oklahoma, Tulsa, Okla., with him on brief), and Carl G. Stevens of Warren, Ricks & Mayfield, of American Civil Liberties Union of Oklahoma, Oklahoma City, Okla., for plaintiffs-appellees-appellants Bobby Battle, et al.

Irving Gornstein, Dept. of Justice, Washington, D. C. (Drew S. Days, III, Asst. Atty. Gen., Dennis J. Dimsey, Brian K. Landsberg, Jessica Dunsay Silver, and Walter W. Barnett, Attys., Dept. of Justice, Washington, D. C., and Julian K. Fite, U. S. Atty., Oklahoma City, Okla., on brief), for plaintiff-intervenor-appellee United States of America.

John Fischer, Asst. Atty. Gen. of Oklahoma, Oklahoma City, Okla. (Jan Eric Cartwright, Atty. Gen. of Oklahoma, Oklahoma City, Okla., with him on brief), for defendants-appellants Park J. Anderson and State Board of Corrections of the State of Oklahoma, et al.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

The genesis of these consolidated cases is the deteriorated physical and internal conditions surrounding Oklahoma's state penal system which were highlighted following a disastrous riot at the State Penitentiary at McAlester, Oklahoma, in 1973. That riot resulted in $20 million in property damage and tragic loss of lives. The jurisdiction of the District Court from whence the instant appeals are brought, was originally invoked on April 24, 1972, when Bobby Battle, then an inmate at the Oklahoma State Penitentiary, filed a *pro se* civil rights action. The American Civil Liberties Union of Oklahoma provided Battle with legal counsel. Following the 1973 riot, the United States was granted the right of intervention pursuant to 42 U.S.C. § 2000h–2. The District Court has since labored through days of hearings, volumes of pleadings, reports, documents, exhibits and memorandums involving controversial issues of overcrowding, sanitation, fire safety, health standards, racial discrimination, segregation, disciplinary rules, and many other matters.

*Case No. 79–1709*

This appeal is taken, in a class action proceeding, challenging that portion of the District Court's Order of May 4, 1979, relating to alleged inadequacies in providing the State's inmates access to the courts. Some factual background is in order.

On March 15, 1979, this Court declined to affirm, reverse or modify the District Court's Order of September 11, 1978, which directed remedial "all-inclusive" action to be taken by Defendants, officials of the State of Oklahoma, for convenience hereinafter simply referred to as State of Oklahoma or State, in upgrading its penal system, with attendant specific compliance deadlines. In light of the protracted litigative history and the tremendous public interest involved in the subject matter, we opined that upon remand the District Court give careful and considered treatment to those remedies urged by the State of Oklahoma. We retained jurisdiction and directed the District Court to certify a supplemental record following a further hearing or hearings to be conducted. *Battle v. Anderson*, 594 F.2d 786 (10th Cir. 1979).

Following a pretrial conference, the District Court conducted hearings on remand on April 19, 20 and 23, 1979, predicated on State of Oklahoma's Motion to modify the Order of September 11, 1978. The cooperative atmosphere was specially observed by the District Court in its "Order Approving Defendants' Proposed Plan" dated May 4, 1979:

Defendants' increasing commitment to meaningful prison reform was evidenced by constructive, enlightening appearances in open courtroom proceedings by Oklahoma's governor, The Honorable George Nigh; the President Pro Tempore of the

State Senate, The Honorable Gene Howard; and the Speaker of the Oklahoma House of Representatives, The Honorable Dan Draper. All pledged strong support to a proposed compliance plan submitted by the defendants.

From this suit's inception, the court's hope has been that proper judicial identification of applicable constitutional standards would result in vigorous, effective state action apart from an exact court mandate. These "good faith" commitments from the State's elected leadership persuade the court that the defendants will now proceed to effectively resolve those fundamental, numerous deficiencies which have persisted so long in Oklahoma's state penal facilities. Overcrowding continues, as does noncompliance with basic sanitation, fire safety, water, electrical, plumbing, ventilation, and sewage system standards, *inter alia*. Aspects of the inmates basic health care needs remain neglected. Many inmates are still denied sufficient work and exercise.

Understandably, inhumane confinement conditions created by 70 years of neglect cannot be remedied overnight, but they can and must be rectified as expeditiously as reason deems practical. The Constitution so mandates. The defendants now propose in good faith to so do.

We would be remiss, indeed, if we did not acknowledge the commendable postures displayed by the District Court and the respective parties in addressing the difficult problems on remand. There were obvious "good faith" endeavors to resolve them.

The sole issue presented for our review challenging the District Court's Order of May 4, 1979, relates to inmate access to the courts.

The District Court's Order of September 11, 1978, required, *inter alia*, that the State of Oklahoma provide civilian legal advisors for its prisoners. Case Number 78–1889 constituted an appeal from the Court's September 11th order wherein the appellant, State of Oklahoma, raised many contentions of trial court error. This order was modified, following the remand hearings, by the District Court's Order of May 4, 1979. All of the challenges directed to the September 11 order have been voluntarily abandoned by the respective parties, and the only issue now before us is that part of the trial court's order of May 4, 1979, wherein the court found that the State's access to the courts program, which did not provide for civilian legal advisors, was in compliance with the mandates of the United States Constitution and *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The District Court specially found:

## IV. ACCESS TO COURTS

13. With the addition of the law library at Lexington, defendant's current approach to providing legal services for prisoners appears acceptable, if perhaps imperfect. The evidence in this case indicates that providing inmates with professional legal advice from outside the prison might well serve the best interests of both the inmates and the State. *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1976) [sic].

On appeal, Battle contends: (1) State's plan for providing access to court does not provide access which is adequate, effective and meaningful, (2) State's plan does not provide adequate and meaningful access to courts for those inmates who are unable to use a law library, and (3) the trial court must grant plaintiffs relief from the serious inadequacies which were previously found to exist in State's access to courts program.

The focus is *Bounds v. Smith, supra.* There the Supreme Court re-affirmed its holding in *Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) (per curiam) that States must protect the constitutional rights of prisoners to access to the courts ". . . by providing them with law libraries or alternative sources of legal knowledge." *Bounds v. Smith, supra*, 430 U.S. at 817, 97 S.Ct. at 1493. The Court also referred to its decision in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Court there held that ignorant and illiterate inmates who had access to an adequate law library were

also entitled to avail themselves of the volunteered assistance from their literate fellow inmates in the presentation of their written claims to the courts. In *Bounds, supra,* the Court stated that ". . . *the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.*" [Emphasis supplied]. 430 U.S. at p. 828, 97 S.Ct. at p. 1498.

Battle contends that when the District Court, upon remand, approved the State's plan, it did so without withdrawing its earlier findings or indicating what evidence, if any, it was relying upon in "changing its position". To be sure, the Court's Order of September 11, 1978, contained these findings/conclusions:

> · This problem has been before this court more than 4 years. *The Court's experience with the problem has convinced it that defendants' reliance merely on law libraries cannot ameliorate the inmates' lack of meaningful access to courts.*

> \*    \*    \*    \*    \*    \*

> *By September 1, 1979, defendants shall provide competent civilian legal advisors in sufficient numbers to insure inmates the means to frame and present legal issues effectively for judicial consideration.* [Emphasis supplied]. *Battle v. Anderson,* 457 F.Supp. 719 at pp. 737, 739.

Battle points out that, upon remand, he presented three expert witnesses, an inmate law library clerk, and the Warden of the McAlester prison, all of whom testified concerning various difficulties and inadequacies posed by the State's plan. In addition, Battle presented testimony regarding the advantages of providing inmates with attorneys.

Battle argues that State ". . . took the position that by providing law libraries, they had as a matter of law provided adequate access to courts." [Brief of Appellant, p. 6]. We agree. State does in fact contend that *Bounds v. Smith, supra,* fully supports the May 4, 1979, Order of the District Court, i. e., ". . . adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts. . . ." *Bounds v. Smith, supra,* 430 U.S. at p. 830, 97 S.Ct. at p. 1499.

State of Oklahoma contends that it has chosen to fulfill the alternative means of providing access to the courts, i. e., law libraries, which, combined with the use of prisoner "writ writers" and "inmate law clerks" meets the constitutional requirements. State's library facilities include two substantial "core" law libraries at the principal prisons located at McAlester and Lexington, with smaller law libraries located at each of State's remaining some six facilities. There is no dispute between the parties on the question whether the library facilities are adequate. Counsel for Battle acknowledged, at oral argument, that the library facilities are very thorough and adequate.

The crux of Battle's contention here is that although the prison library system is adequate that *Bounds v. Smith, supra,* requires more. Battle argues that an adequate library system does not provide "access to the courts" to those illiterate and/or ignorant inmates who must presently depend upon fellow prisoners, popularly referred to as "jail house lawyers" but referred to by State as "writ writers" and "inmate law clerks" who practice favoritism, bribery and physical abuse upon the illiterate and ignorant prisoner desiring legal assistance. State contends that *Bounds v. Smith, supra,* holds that the adequate library system now available to the State's inmates meets the federally mandated constitutional requirement of adequate "access to the courts". At oral argument, however, State contended that for those illiterate and/or ignorant prisoners who cannot personally employ the library facilities for their research and writing, "access to the courts" can now be accomplished with the assistance of inmate "writ writers" and "inmate law clerks".

Battle and the United States point out that in the District Court's Order of September 11, 1978, the Court found that it was necessary that State provide compensated civilian legal advisors to the inmates in order to assure them effective "access to the courts" with full knowledge of State's use of inmate "writ writers" and "inmate law clerks". Thus, they argue, the District Court *did not* in anywise vacate or abandon its September 11, 1978, findings while apparently but without *any contrary findings*, determined that because of State's addition of the excellent law library at the Lexington prison, the State's approach of providing prisoner "writ writers" and "legal intern" services "appears acceptable, if perhaps imperfect".

█ We reluctantly conclude that we must remand this cause for such further proceedings as the District Court deems proper and necessary to provide this Court with an adequate record containing the District Court's factual and legal basis supporting that portion of its May 4, 1979, order entitled "IV. Access to Courts" paragraph 13. Such further proceedings are required by Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A. *See also: Kennedy v. Meacham,* 540 F.2d 1057 (10th Cir. 1976), *E.E.O.C. v. Wilson & Co., Inc.,* 535 F.2d 1213 (10th Cir. 1976); *United States v. Douglas Construction Co., Inc.,* 531 F.2d 478 (10th Cir. 1976); *Fullmer v. Harper,* 517 F.2d 20 (10th Cir. 1975) (per curiam).

The cause is therefore remanded to the District Court for such proceedings deemed proper and necessary leading to findings and conclusions to be made on the issue of inmate access to the courts.

### Case No. 78–1318

State here appeals the order of the District Court filed February 28, 1978, granting the motion of Louis W. Bullock for award of attorney fees *pendente lite* pursuant to 42 U.S.C. § 1988. This statute, as amended Pub.L. 94–559, § 2, Oct. 19, 1976, 90 Stat. 2641, authorizes the district court, in its discretion, to award reasonable attorney's fees to the prevailing party, other than the United States, as part of the costs in a proceeding brought under 42 U.S.C. § 1983.

Following a hearing on the motion, the court entered its findings and conclusions and granted judgment awarding Bullock $29,580.00 in attorney fees for services rendered, together with $1,206.70 as reimbursable expenses, or a total award of $30,786.70 against the State Board of Corrections of the State of Oklahoma. A brief recitation of the relevant facts is required.

Mr. Bullock became engaged in this case in October, 1975, while practicing law in Stillwater and Tulsa, Oklahoma. He testified that since entering the case, he spent between 800 and 1,000 hours ". . . but much of that I didn't keep time records on, either because of the fact that at the time I began working on the case I did not believe there was any possibility of attorney fees, and further, much of that time is involved in such tasks as reading a copious amount of inmate mail . . ." [R., Vol. I, pp. 5, 6]. Even so, Bullock testified that he had documented 493 hours, either by his use of time slips or a calendar admitted in evidence, about one-fourth of which involved time spent before the courts; further that the hourly rate of compensation for work [legal] of this "sophistication" asked for is $60.00 [R., Vol. I, pp. 6, 7]. Bullock's expense exhibit in amount of $1,206.70 was admitted in evidence. The fees requested and reimbursable expenses pertain to services rendered through November 4, 1977. [R., Vol. I, p. 10].

On cross-examination, Bullock stated that although the average is probably $50.00 per hour for all law work he performs (with some work ranging as low as $10.00 per hour) that cases as complex as the *Battle* case demand the higher fee. [R., Vol. I, pp. 11, 12].

Bullock's testimony relative to the nature and complexity of this case and the litigation it has generated convinced Oklahoma City practitioner Burck Bailey, who possessed unquestioned professional qualifications and background, that the $60.00 per

hour fee was reasonable. [R., Vol. I, pp. 13–17]. Two other experienced Oklahoma City attorneys, Mr. James A. Ikard and Mr. Philip F. Horning, both of whom have engaged in civil rights cases and litigation in Oklahoma for at least ten years, testified that the nature of the legal work performed by Mr. Bullock in this case is reasonably worth $70.00 to $75.00 per hour considering all of the factors utilized by members of the private bar in setting fees. Each testified that $60.00 is a minimum acceptable hourly rate. [R., Vol. I, pp. 14–40]. Both attorneys testified as to the novelty and difficulty of the issues confronting Mr. Bullock in this case and they believed that it was more likely that Bullock spent upwards of 800 hours on the case, rather than the documented 493 hours that the fee was based on.

The State did not present any evidence. On cross-examination of Mr. Bullock, the State elicited that Bullock had originally undertaken legal representation on a contingent fee basis, but that he had received absolutely no fee from *Battle* or other class clients and that he (Bullock) should reimburse the American Civil Liberties Union certain expense monies advanced him in amount of some $800.00. In addition, Bullock testified that some $400.00 expense money represented his private funds.

Following the evidentiary hearing, the District Court orally observed that: The litigation here involved was initiated in 1972 and thereafter generated great public attention following the disastrous riot at the El Reno prison in 1973; the litigation has been continuous and "ongoing" since that time; the $60.00 per hour fee is most reasonable and that Bullock "put in much more than the 493 hours" which is the basis of his fee claim; the fee of $29,580.00 will be awarded Bullock for services rendered to the date of filing of his motion; the expense items are allowed; the fees and expenses are properly allowable under the Civil Rights Act [R., Vol. I, pp. 48–50]. The Court thereafter entered formal findings and conclusions, among which the court concluded that 42 U.S.C. § 1988, amended October 19, 1976, authorizes the award of attorney fees to plaintiffs in such a civil rights action as that presented here "even though the case was filed prior to the passage of the Act and was pending at the time the Act was passed".

Upon initial appeal, Oklahoma urged that the Eleventh Amendment barred an award directing payment of any of Bullocks' fees or expenses from funds of the State Department of Corrections. However, this issue has since been resolved by the Supreme Court in *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), where the Court held that the States are not insulated from such claims under the Eleventh Amendment.

On appeal, Oklahoma contends: (A) that the record does not support the District Court's award of Bullock's fees pursuant to 42 U.S.C. § 1988 because the findings/conclusions do not permit the requisite appellate review based on these twelve factors the statute requires the Court to consider:

> (1) the time and labor required, (2) the skill requisite to properly perform the legal services, (3) preclusion of other employment by the attorney due to acceptance of the case, (4) the novelty and difficulty of the questions presented, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client, (8) the amount involved and the results obtained, (9) experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship of the client, and (12) awards in similar cases. House of Representatives Report No. 1558, 94th Cong., 2nd Sess. 8 (1976); Senate Report No. 1011, 94th Cong., 2nd Sess. 6 (1976). [Brief of Oklahoma, pp. 7–8].

(B) that because only the "prevailing party" is entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988, and inasmuch as there is no finding in the record that the plaintiffs in this case are the "prevailing parties", claimant Bullock is precluded from the award; (C) the award is

excessive in that it is not supported by substantial evidence; (D) the failure of the District Court to consider each of the critical factors, *supra*, is clearly erroneous; (E) the District Court did not distinguish between in-court and out-of-court time, nor legal time and travel time in fixing the flat fee; and (F) where litigation is conducted in the "public interest" and the public will ultimately bear the cost of the award of attorney's fees, the fee granted should be less than normally appropriate.

■ We must reject the contentions of State of Oklahoma after carefully reviewing the record before us. First, the record shows that Bullock's itemized 493 hours do not include time traveling, etc., but rather "hard time". [R., Vol. I, p. 36].

■ We hold that Bullock did in fact represent the "prevailing party" under the Act. It has been held that a "prevailing party" is one within the meaning of the Act who succeeds on any significant issue in litigation which achieves some of the benefits sought in bringing the suit. *Jones v. Diamond*, 594 F.2d 997 (5th Cir. 1979); *Gague v. Maher*, 594 F.2d 336 (2nd Cir. 1979) *cert. granted*, —— U.S. ——, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979); *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978). In *Gague v. Maher, supra*, the court concluded that ". . . once it has been determined that plaintiff obtained benefits for the class in the settlement on some claim, plaintiff is 'the prevailing party' within the meaning of the statute . . . as long as the constitutional claim is substantial . . ." 594 F.2d at p. 340. The litigative history of the instant case demonstrates that *Battle*, et al., have "prevailed" on substantial constitutional claims. *See: Battle v. Anderson*, 564 F.2d 388 (10th Cir. 1977); *Battle v. Anderson*, 376 F.Supp. 402 (E.D.Okl.1974); *Battle v. Anderson*, 447 F.Supp. 516 (E.D. Okl.1977).

■ This Court has recognized the discretionary power of the district courts to allow attorney fees under the provision of 42 U.S.C. § 1988, as amended, to the "prevailing party". *See: Francia v. White*, 594 F.2d 778 (10th Cir. 1979), *citing to Bond v.*

*Stanton*, 555 F.2d 172 (7th Cir. 1977) *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). We there observed that the court of appeals cannot fix an attorney's fee with any degree of accuracy, and that such determination should be made by the trial court based on evidence meeting most of the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). We have reviewed the twelve points of the *Johnson* criteria against the record on appeal. In our view, the District Court had before it substantial evidence dealing with all or nearly all of the twelve points and considered each in entering Bullock's award. *See: E. E. O. C. v. Safeway Stores*, 597 F.2d 251 (10th Cir. 1979).

■ We also hold that the 1976 amendment to 42 U.S.C. § 1988 providing for award of attorney fees as part of the costs to the "prevailing party" applies to cases pending on the effective date of its enactment, which is October 19, 1976. Such is borne out from the legislative history. *Bond v. Stanton, supra*. The instant case was initiated in 1972 and has been "ongoing" since. The record is clear that at all times Mr. Bullock has been associated with this litigation, the plaintiffs in the District Court, Battle, et al., have substantially "prevailed" in terms of relief sought. *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979); *Keyes v. School Dist. No. 1, Denver, Colo.*, 439 F.Supp. 393 (D.Colo. 1977).

We share the hope expressed by the District Court that this litigation is nearing its end. Certainly, as observed by the District Court, the State of Oklahoma has made great effort and has displayed good faith in its attempts to alleviate the serious deficiencies found to exist in its penal system.

■ In our view the District Court conducted adequate evidentiary hearings and entered the challenged award based upon substantial evidence. Furthermore, the court did not abuse its discretion. The District Court's findings and conclusions are not clearly erroneous. Under the terms of

§ 1988, attorney fees are classified as costs, recoverable by the prevailing party in the discretion of the trial court. *See also* : F.R. Civ.Proc., rule 54(d), 28 U.S.C.; *True Temper Corp. v. C F & I Steel Corp.*, 601 F.2d 495 (10th Cir. 1979); *Popeil Brothers, Inc. v. Schick Electric, Inc.*, 516 F.2d 772 (7th Cir. 1975).

WE AFFIRM.

### Case No. 78–1889

On March 15, 1979, this Court declined to affirm, reverse or modify the District Court's Order of September 11, 1978, which was the subject of the above captioned appeal. During the course of oral arguments, all parties acknowledged that none of the issues raised in this appeal were now before this Court in light of the hearings on remand and the Order of the District Court entered May 4, 1979. Thus, we order that Case No. 78–1889 be forthwith dismissed.

McKAY, Circuit Judge, concurring:

I concur in the court's opinion in all three companioned cases. I add this statement to clarify my concurrence in one portion of the opinion. We have said:

> We reluctantly conclude that we must remand this cause for such further proceedings as the District Court deems proper and necessary to provide this Court with an adequate record containing the District Court's factual and legal basis supporting that portion of its May 4, 1979, order entitled "IV. Access to Courts" paragraph 13.

My reluctance arises from an appreciation for the horrendous task which has already been undertaken by the trial court and the litigants. I do not in any sense imply that the remand is merely pro forma since the trial court's only prior findings indicate the seriousness of the problem of adequate assistance to indigent prisoners with limited legal skills. When focusing exclusively on the issue of the adequacy of "writ writers" or other inmate assistance, the trial court undoubtedly will give full consideration to the dangers inherent in prisoners being able through these functions to exercise unreasonable control on their fellows and the effect that might have on reasonable access to courts.

WILLIAM E. DOYLE, Circuit Judge, concurring:

I must concur specially in the above-entitled case. The sole issue on which I have some misgivings about a general affirmance is that we have not provided any guidelines for establishing a systematic program for a counseling service within the institution.

I question, first of all, whether the use of so-called writ writers should be given the stamp of approval because of the consequences which can flow from putting inmates in a position in which they have other inmates under obligation to them. It is said that no other program is possible because of lack of funds. But, I do believe that the Bar Association and the law schools would cooperate in a counseling and assistance service. Perhaps students from the University of Oklahoma, Oklahoma City University, Tulsa University Law School and Oral Roberts University would cooperate in sending students to the institution to interview inmates and perform research under the guidance of faculty members. It may well be that the institution-wise and hardened counselors are capable. I do not know about this. But, it was brought out in oral arguments that use of them creates secondary problems. I can readily understand this. So, my position is that some effort must be made to use other resources before the entire responsibility is placed on inmates.