**Norman HINTON and James Nye**

v.

**Sheriff Charles VETTER, Charles Vetter, Individually, County of Rockingham.**

Nos. C81–31–L, 81–32–L.

United States District Court,
D. New Hampshire.

Feb. 2, 1981.

G. Page Brown, Jr., Exeter, N.H., for plaintiffs.

Carleton Eldredge, Rockingham County Atty., Exeter, N.H., for defendant.

## ORDER ON PETITION FOR PRELIMINARY INJUNCTION

LOUGHLIN, District Judge.

The plaintiffs have instituted an action seeking injunctive relief in that they desire to be reinstated as deputy sheriffs in Rockingham County both on a temporary and permanent basis. They allege that they were discharged from their employment as deputy sheriffs in violation of their constitutional rights under the first and fourteenth amendments to the constitution. In particular they allege that they come within the purview of 42 U.S. Code 1983. In addition on the preliminary hearing for temporary injunction they allege immediate and irreparable harm with no remedy available. The court has granted the plaintiffs' motion to consolidate their cases.

At the hearing on January 22, 1981 most of the facts were uncontrovered.

Dorothy Meneghin, a reporter for Foster's Daily Democrat covering news stories in Exeter, New Hampshire was subpoenaed as a witness for the plaintiffs.

She interviewed Charles Vetter, present sheriff of Rockingham County on December 22, 1980. At first, Vetter told her that the plaintiffs would not be reinstated, later the same day she was informed by him that the plaintiffs would not be reappointed because they had supported Cook, Vetter's opponent in the primary.

Vetter felt that it was a question of loyalty. The job has always been politically motivated and he felt sorry for the plaintiffs.

Plaintiff, James Nye of Raymond, New Hampshire testified. His background in law enforcement included a year and a half on the Plaistow, Police Department with a subsequent stint of almost five years on the Raymond Police Department. On February 4, 1980, then incumbent Sheriff George Sampson appointed him as a Deputy Sheriff. Nye is registered as an independent.

Nye dealt mainly in serving civil process, he did some transporting of prisoners from

and to the county jails and aided small town police forces in Rockingham County on criminal cases. His salary was within a $16,200 to $16,500 range.

In the summer and fall of 1980 three Republicans were campaigning for Sheriff, Cook, Vetter and Southwick as the incumbent Sheriff Sampson chose not to run for reelection.

On August 6, 1980 Nye was in the office of Chief Deputy, Charles Vetter. A discussion ensued relative to Vetter's campaign for sheriff and Nye was asked about his efforts to get sign locations. The next discussion ensued on September 15, 1980. Present were Sheriff George Sampson and Chief Deputy Vetter. George Sampson said "Guess you backed the wrong man". Nye stated that his three prior weekends had been spent working with others making two thousand signs for Vetter. Nye was accused of backing Cook because he was observed talking with Cook on Route 111. Nye admitted this but informed Sampson and Vetter that he didn't vote for Cook and would be agreeable to taking a polygraph test. The polygraph operator was not in the immediate area at this time. Nye asked Vetter if he would be appointed and was informed at this point in time, Vetter did not know.

At 10:30 A.M. on December 19, 1980 Sheriff Sampson told him that Vetter did not reappoint him, also, it was agreed Nye had done a good job. Sampson suggested and the suggestion was followed that Nye go on vacation with the other deputy, Norman Hinton for a period of two weeks in order that he might look for alternative employment. On January 15, 1981 Nye reported for work. Sheriff Vetter stated he had received correspondence from Nye's attorney, Page Brown. Vetter stated, "I didn't appoint you or dismiss you", but I am not going to reappoint you. Vetter agreed to give letters of recommendation on Nye's behalf, as Nye requested. Nye stated that fault was never found with his work. He presently is working as a part time police officer for the Town of Raymond, but the employment ends this week as the department is back to full complement of four men. He is barely surviving economically; his wife is a registered nurse. The county never granted a hearing to Nye or Hinton. Reference is made to Exhibit a's in both cases which since of course have been consolidated for trial as of today's date. These exhibits refer to the appointments of both Nye and Hinton as deputy sheriffs. The appointments state in part the following, "TO HAVE AND TO HOLD said office of Deputy Sheriff with all the power and authority thereto appertaining, during my pleasure."

It has been agreed that neither plaintiff was discharged in accordance with RSA 104:27.

Plaintiff Norman Hinton also testified. He is from Salem, New Hampshire. Up to the date of his discharge he was a deputy sheriff for three years and three months having been appointed by then incumbent Sheriff George Sampson.

His duties consisted mainly of serving of process in the Windham-Salem area. No complaint was ever made about his work.

Hinton candidly admitted verbally supporting Cook but stated that he never actively campaigned for Cook. He also admitted his daughter did work in the primary for Cook.

The day after the election in which Vetter was victorious, Sheriff Sampson informed Hinton that Vetter did not reappoint him stating "you are no longer a member of the fold".

Due to his being discharged, Hinton's daughter had to drop out of college. Hinton has four children, three of whom are minors or dependent on him for support. He is presently unemployed. His wife works twenty hours a week at the minimum wage. Sheriff Vetter did tell him that he was not going to reappoint him. All other deputy sheriffs with the exception of the plaintiffs have been reappointed.

The New Hampshire Statutes cited by counsel were the following.

104:3 *Deputies; Appointment.* A sheriff may appoint so many deputies as he

thinks proper, by deputation in writing, under his hand and seal, and not otherwise, who shall be sworn to the faithful discharge of their duties. The deputation and certificate of oath thereon shall be recorded at length by the clerk of the superior court in a book kept for that purpose, and no deputy shall act as such until the record is made.

104:14 *Vacancy, Power of Deputies.* Whenever a vacancy happens in the office of sheriff, the deputies and jailers then in office shall continue to execute the same in the name of the late sheriff until another is appointed and qualified, and until they have completed all business previously intrusted to them.

104:27 *Deputy, Discharge.* A sheriff may discharge from office any of his deputies, by writing under his hand and seal, which shall be served by another deputy by reading the same or giving an attested copy thereof to the deputy so discharged; and such discharge, with a certificate of the service thereof, shall be recorded in the manner prescribed for recording deputations.

It has also been agreed that while the plaintiffs were given unequivocal oral statements of discharge, strict compliance in accordance with RSA 104:27 was not adhered to as heretofore stated.

Hinton due to his longevity over Nye had received two appointments from former Sheriff Sampson in 1977 and again in 1979.

The United States Supreme Court in a split decision in the case of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 decided in 1975, addressed a similar problem or issue.

In December 1970 a Republican Sheriff of Cook County was replaced by a Democrat. The respondents were all non-civil service employees.

It has been the practice of the Sheriff of Cook County, when he assumes office from a Sheriff of a different political party, to replace non-civil service employees of the Sheriff's Office with members of his own party when the existing employees lack or fail to obtain requisite support from, or fail to affiliate with, that party. Consequently, subsequent to Sheriff Elrod's assumption of office, respondents, with the exception of Buckley, were discharged from the employment solely because they did not support and were not members of the Democratic Party and had failed to obtain the sponsorship of one of its leaders. Buckley is in imminent danger of being discharged solely for the same reasons.

The cost of the practice of patronage is the restraint it places on freedoms of belief and association . . . .

An individual who is a member of the out-party maintains affiliation with his own party at the risk of losing his job. Ironically in this case all parties are members of the Republican party excepting Nye who is an independent but states that he worked for Vetter.

Continuing on the Supreme Court reasoned in affirming the seventh circuit's instructing the District Court to enter appropriate preliminary injunctive relief.

In summary, patronage dismissals severely restrict political belief and association. Though there is a vital need for government efficiency and effectiveness, such dismissals are on balance not the least restrictive means for fostering that end. There is also a need to insure that policies which the electorate has sanctioned are effectively implemented. That interest can be fully satisfied by limiting patronage dismissals to policymaking positions. Finally, patronage dismissals cannot be justified by their contribution to the proper functioning of our democratic process through their assistance to partisan politics since political parties are nurtured by other, less intrusive and equally effective methods. More fundamentally, however, any contribution of patronage dismissals to the democratic process does not suffice to override their severe encroachment on First Amendment freedoms. We hold, therefore, that the practice of patronage dismissals is unconstitutional under the First and

Fourteenth Amendments, and that respondents thus stated a valid claim for relief.

In a recent tenth circuit case *Francia et al. v. White* decided March 14, 1979, 594 F.2d 778, the facts were as follows.

The case involved a 1983 civil rights action in which former deputy sheriffs were terminated by the defendant. They had each of them supported the defendant's Democratic opponent.

The evidence at the trial showed that the plaintiff, Francia had written a letter to the editor of a local newspaper urging the election of the opponent of the defendant; the other plaintiff had been active in the campaign against the defendant.

Defendant denied telling the plaintiffs if he did not retain them it would be because of their political affiliations.

The tenth circuit opinion stated at page 782.

Also fundamental is the principle that an employee is not to be discharged from a job which he is satisfactorily performing solely on the basis of his political beliefs. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

It should be pointed out that these plaintiffs were serving in non-policy making non-confidential positions. Their job was to enforce or execute the law. Also they were adequately performing their duties. The denial of continued employment was shown to have been strictly on a political basis. *Perry v. Sindermann* held that a teacher could not be fired for exercising First Amendment rights. There, the plaintiff, a college professor, had been denied renewal of his contract due to his political activities. The case at bar is plainly within the scope of *Elrod, supra.* Inasmuch then as the plaintiffs were exercising rights which were protected by the First and Fourteenth Amendments, their being fired on this ground was unlawful and the trial court was correct in its evaluation of the evidence and in its finding and conclusion.

The fact that the number of employees in the Sandoval County Sheriff's Office is relatively small does not provide an adequate state interest for the action here in question.

The court delayed its decision on granting preliminary relief due to the request of defendant's counsel for more time to submit a memorandum of law. Plaintiff's counsel agreed.

The court has examined defendant's memorandum of law and agrees in principle with the minority opinion in *Elrod v. Burns*, supra, especially the comments of Chief Justice Burger and the further comments of the Rockingham County Attorney, Carleton Eldredge pertaining to federal court intrusion into a state and local matter. Regardless of the court's sentiment it must follow legal precedent. The court is of the opinion that the almost uncontroverted facts of these consolidated cases are on all fours with *Elrod v. Burns, supra* and *Francia v. White, supra.*

The plaintiffs are suffering irreparable harm. Hinton is unemployed and Nye at the date of the hearing for a preliminary injunction was on his last week of temporary employment with the Raymond Police Department.

The court makes the following order.

A preliminary injunction is issued, restraining the defendant from discharging both plaintiffs and they are ordered reinstated immediately. It is also the order of this court that they be paid back pay to the date of their unlawful discharge, less any earnings they may have during this period which does not exceed or equal their salaries as deputy sheriffs for this interim.

The court will hear at another time what appears to be a motion to dismiss Rockingham County as a party to this action which was filed as of today's date as memorandum of law and argument in opposition to the motion for preliminary injunction.