In re KANSAS CONGRESSIONAL
DISTRICTS REAPPORTIONMENT
CASES.

Pat O'SULLIVAN; John Schmidt; Leonard Moore; Eva Jane Vaughn; Verdis Robinson; Mary Ladesic; Alois G. Befort, Jr., and Nathaniel Watson, Plaintiffs-Appellees,

v.

Jack H. BRIER, Secretary of State of the State of Kansas, Defendant-Appellant.

Walter W. CARSON; Paul N. Bahnmaier; J. Kurt von Achen, and Vallerie Ann Miller, Plaintiffs-Appellees,

v.

John CARLIN, Governor of the State of Kansas, and Jack H. Brier, Secretary of State of the State of Kansas, Defendants-Appellants.

Nos. 82–2206, 82–2207.

United States Court of Appeals,
Tenth Circuit.

Oct. 5, 1984.

Arnold Berman and Eugene W. Hiatt, Hiatt, Hiatt & Carpenter, Chartered, Topeka, Kan., for plaintiffs-appellees.

Dan Biles, Asst. Atty. Gen. of Kan., Topeka, Kan. (Robert T. Stephan, Atty. Gen. of Kan., Topeka, Kan., with him on brief), for defendants-appellants.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.
## I. NATURE OF THE CASE

This is an appeal by defendants from a three-judge district court's award of attorney's fees to plaintiffs. This is the aftermath of a successful challenge of the constitutionality of the existing Kansas congressional districts. This court has jurisdiction over the appeal. *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 737 n. 16, 100 S.Ct. 1967, 1977 n. 16, 64 L.Ed.2d 641 (1980). The statute [1] contemplates a case such as this and approves an appeal to the

court of appeals. In the *Consumers Union* case, the decision was made by the Supreme Court. Here we have an appeal from the grant of attorney's fees.

## II. FACTS

The case began with the release of the 1980 Census Bureau figures. The Kansas legislature attempted to enact a new reapportionment law to comport with the figures. Governor Carlin vetoed both redistricting measures presented to him, and subsequent legislative attempts to override the veto or to enact another law proved unsuccessful.

On April 23, 1982, the day after the Governor vetoed the second redistricting bill, Pat O'Sullivan and seven others (collectively the O'Sullivan plaintiffs) filed suit against Secretary of State Jack Brier seeking a declaratory and injunctive decree. They alleged that the existing congressional districts violated Article I, Section 2 of the United States Constitution, the Fourteenth Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. The O'Sullivan plaintiffs requested that a three-judge district court adopt a new redistricting plan because the legislature was unlikely to enact one in time for the 1982 congressional elections. They presented to the court their own proposal, which was supported by Democratic interests in the legislature.

On May 5, 1982, Walter W. Carson and three others (collectively the Carson plaintiffs) brought a similar suit against both Secretary Brier and Governor Carlin. They proposed a different redistricting plan, which was favored by the Republicans in the legislature.

Secretary Brier, in answering both complaints, acknowledged the invalidity of the existing districts but denied any violation

---

**1.** 28 U.S.C. Sec. 1253. This statute provides: "Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges." The Court in *Consumers Union* stated that although it would

not have had appellate jurisdiction under 28 U.S.C. Sec. 1253 to decide the issue of attorney's fees had it *alone* been appealed, Supreme Court jurisdiction was proper in that case because a substantive issue was also appealed. In the instant case, however, only the attorney's fee issue has been appealed; therefore a court of appeals properly has jurisdiction.

of 42 U.S.C. § 1981 or § 1983. He also submitted a redistricting proposal, which was the same as that offered by the Carson plaintiffs. On May 14, 1982, the Kansas legislature adjourned without enacting any redistricting measure.

The O'Sullivan group and the Carson group cases were consolidated for trial before a three-judge district court, which agreed with all the parties that the existing congressional districts were unconstitutional. The court adopted for the most part the redistricting plan proposed by the O'Sullivan plaintiffs. Thereafter it awarded attorney's fees, pursuant to 42 U.S.C. § 1988, to both sets of plaintiffs, the grounds being that both had urged the adoption of a new, constitutionally valid redistricting plan. Defendants have appealed only this award of attorney's fees.

The issues, therefore, are:

I. Whether the O'Sullivan and Carson plaintiffs were "prevailing parties" for purposes of 42 U.S.C. § 1988. If they are prevailing parties, whether any "special circumstances" render an award of attorney's fees unjust.

II. Whether the attorney's fees awarded were reasonable.

III. Whether the plaintiffs may be awarded additional attorney's fees and expenses for defending their original award on appeal.

### The Issue of Special Circumstances

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that in actions to enforce civil rights, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The defendants urge that neither the O'Sullivan plaintiffs nor the Carson plaintiffs were prevailing parties because their case did not involve violations of 42 U.S.C. § 1981 or § 1983. Defendants further argue that the Carson plaintiffs did not pre-

vail in this case because the district court rejected the Carson redistricting plan in favor of the O'Sullivan proposal.

The answer to this is that the O'Sullivan and Carson plaintiffs clearly brought their suits to enforce alleged violations of 42 U.S.C. § 1981 and § 1983. Even though Secretary Brier had not taken any official action to enforce the unconstitutional congressional districts at the time of the suits, he was "the state officer in charge of administering the election laws." *O'Sullivan v. Brier*, 540 F.Supp. 1200, 1207 (D.Kan. 1982). The existing congressional districts were unconstitutional, and the legislature had failed to enact any new plan with only fifty-nine days remaining for candidates to file in the 1982 congressional elections. The plaintiffs' constitutional rights therefore were threatened, and they did not need to rely on Brier's assertion that he would not enforce the existing districts. "Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction." *Consumers Union, supra* at 739, 100 S.Ct. at 1978.

■ Furthermore, both the O'Sullivan and Carson plaintiffs prevailed in their lawsuits because they succeeded on a "significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978).[2] In this case, both sets of plaintiffs succeeded in invalidating the existing congressional districts and in having the district court adopt a constitutionally permissible reapportionment plan. The fact that the district court adopted O'Sullivan's proposal does not mean that the Carson plaintiffs are out in the cold. *See Ramos v. Koebig*, 638 F.2d

---

2. This standard is a liberal one, but it only brings the plaintiffs across the statutory threshold. A district court still must determine what fees are "reasonable" for prevailing plaintiffs.

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The reasonableness of the district court's award in this case is discussed *infra*.

838, 845 (5th Cir.1981) (plaintiffs were awarded attorney's fees because they prevailed on the constitutional redistricting issue, even though the district court rejected plaintiff's reapportionment plan). As the district court in this case observed, "the Carson plaintiffs have prevailed also, in the sense that they too urged us to adopt a new reapportionment plan, which we did." *O'Sullivan v. Brier, supra,* at 1208. The district court also noted that the Carson plaintiffs brought in the Governor as a party and that they represented a different constituency than the O'Sullivan plaintiffs. Order on Motion to Alter or Amend Judgment, Record on Appeal, Vol. 1, at 195.

In recognizing both sets of plaintiffs as prevailing parties in a civil rights action, they are "ordinarily entitled to reasonable attorney's fees * * * unless special circumstances would render such an award unjust." *Love v. Mayor, City of Cheyenne, Wyoming,* 620 F.2d 235, 236 (1980), citing *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). There are no such special circumstances here. Secretary Brier's assurance that he would not enforce the existing unconstitutional districts and that he would file his own lawsuit to correct the situation amounts to no more than an assertion that he acted in good faith, which is not a special circumstance. *Love v. Mayor, City of Cheyenne, Wyoming, supra* at 236.

### Were the Attorney's Fees Reasonable?

Both the O'Sullivan and Carson plaintiffs were awarded attorney's fees at a rate of $75 per hour for the full number of hours expended on the case. The Carson plaintiffs had requested $85 per hour, which the court lowered to $75 per hour. The total amount awarded to each set of plaintiffs, including attorney's fees and other costs, was $14,129.05 for the O'Sullivan plaintiffs, and $9,115.17 for the Carson plaintiffs. The district court relied upon the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974),[3] in calculating the awards. Defendants argue that the district court failed to consider the relationship between the results obtained through the lawsuits and the attorney's fees awarded. *Hensley v. Eckerhart, supra; Cooper v. Singer,* 719 F.2d 1496 (10th Cir.1983). The contention is that the results obtained by both sets of plaintiffs were not in vindication of their civil rights and that therefore no attorney's fees should be awarded.

The district court was correct in holding that both the O'Sullivan and Carson plaintiffs brought suit to vindicate their civil rights, as discussed *supra.* It then properly took into account all necessary factors in calculating the fee awards. In its Order Awarding Attorney's Fees, the court specifically discussed the results obtained by the litigation, as now required by *Hensley v. Eckerhart:* "They [the cases] did involve significant constitutional issues that had statewide impact. Nevertheless, we give no special premium because of the results obtained." Record on Appeal, Vol. 1, at 224–25. Thus, although the court was unwilling to give either set of plaintiffs a bonus for their efforts, it indicated that the results obtained did merit a full award of attorney's fees. Moreover, the fact that some of the issues raised by the plaintiffs were political rather than constitutional does not alter the award. Because these lawsuits "cannot be viewed as a series of

**3.** The twelve factors are: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; the time limitations imposed by the client or circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The *Johnson* factors have been endorsed by the Tenth Circuit. *Ramos v. Lamm* 713 F.2d 546 (10th Cir.1983); *Battle v. Anderson,* 614 F.2d 251 (10th Cir.1980); *Francia v. White,* 594 F.2d 778 (10th Cir.1979). However, "while these factors are useful, some are seldom applicable, and none is self-actuating." *Ramos v. Lamm, supra* at 552.

discrete claims," the district court properly focused on "the significance of the overall relief obtained * * * in relation to the hours reasonably expended on the litigation." `Hensley v. Eckerhart, supra* 103 S.Ct. at 1940.

 Finally, it is to be noted that the district court has discretion in calculating the fee awards. "This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 1941. Here because the district court provided a clear explanation for its determination of the fee awards, including reference to the results obtained by the plaintiffs, it did not abuse its discretion and the initial award will stand. *See Shaw v. Neece,* 727 F.2d 947, 949–50 (10th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984).

### Are the Plaintiffs' Lawyers Entitled to Additional Fees?

 Our reaction to this is that both sets of plaintiffs are entitled to an additional award of attorney's fees and expenses for defending their original awards on this appeal. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Shaw v. Neece, supra; Love v. Mayor, City of Cheyenne, Wyoming, supra.* This case should therefore be remanded to the district court to set an appropriate fee. *Shaw v. Neece, supra.* We are not in a position to ascertain and decree the amount of the fees here in question. It is true that both the Carson and O'Sullivan plaintiffs have both requested specific amounts. The O'Sullivan plaintiffs have requested $1,519.' *00* and the Carson plaintiffs have requested $2,340.24. However, they have not provided any background material in support of their request. Accordingly, it is the judgment of this court that this remaining question should be taken up by the trial judge.

The cause is remanded for that purpose. Otherwise the judgment is affirmed.