**BACHE & CO., a corporation, Plaintiff,**

**v.**

**Henry CLAY and Eunice Clay, jointly and severally, Defendants.**

**Civ. No. 72–625.**

United States District Court,
W. D. Oklahoma,
Civil Division.

Aug. 29, 1973.

———◆———

Roy Davis, Oklahoma City, Okl., for plaintiff.

John B. Ogden, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

In this case the Plaintiff, Bache & Co., sues the Defendants, Henry Clay and wife, with reference to a stock-brokerage joint trading account said Defendants carried with Plaintiff and which involved stock of Diversified Medical Investments Company (DMIC). Plaintiff claims that there is a $13,162.-50 balance due and owing it on Defendants' joint account as a result of stock transactions in said stock made by

Plaintiff as agent of Defendants and for their benefit. Defendants deny Plaintiff's assertions and by counterclaim against Plaintiff assert that Plaintiff now holds 7000 shares of DMIC stock in Defendants' account, that such shares were worth $3.25 per share when delivered to Plaintiff and that Defendants are entitled to Judgment against Plaintiff in the amount of $22,750.00 as the value of said stock plus attorney fees.

From the evidence presented in the non-jury trial it appears that Defendants merged an oil company they owned into DMIC. From this merger Defendants received a quantity of DMIC stock. Defendants on November 18, 1970 opened a joint trading account with Plaintiff, a member of National Association of Security Dealers (NASD), and ultimately placed a total of 8200 shares of DMIC stock[1] with Plaintiff in their joint trading account with selling instructions.[2] This joint trading account always had a long balance of 2000 shares of said stock therein which number of shares were never sold by Plaintiff, they remain in the account now and are subject to return to Defendants when their joint account is cleared up. Plaintiff sold 1500 shares of said deposited stock which cleared the transfer agent of DMIC and were delivered to the purchasers, the purchase price being credited to the account of and received by Defendants. Plaintiff sold the remaining 4700 shares in the account to certain broker-buyers at various times until December 29, 1970 with the proceeds being credited to Defendants' account and being either used to buy other stocks or drawn by Defendants. On these sales, however, Plaintiff ultimately could not deliver transferable shares of Defendants' stock because a dispute arose in connection with the aforesaid

merger as a result of which DMIC placed a so-called "stop order" on the transfer of the Defendants' stock which included the 8200 shares deposited with Plaintiff by Defendants. DMIC notified the Defendants and their transfer agent of said stop order on December 3, 1970 by letter.

The Court finds and concludes from the evidence that Defendants thereafter notified Plaintiff of this stop order after Defendants made some investigation of the same, advised Plaintiff that this was only a technical and temporary stop order, that the same would be cleared up in a few days and the stock would then be transferable. The Court further finds and concludes from the evidence that at this time the Defendants instructed Plaintiff in these circumstances to proceed with the sale of their DMIC stock remaining in their joint account with Plaintiff and which had not theretofore been sold by Plaintiff. Before proceeding to do so, however, Plaintiff inquired of an attorney who had previously provided the customary letter as to the transferability of this stock, inquired of a representative of the transfer agent, inquired of Plaintiff's legal department in New York and from all sources Plaintiff received information that the stop order was only technical and temporary in nature and would be lifted in a few days as the matter would be cleared up very shortly. It appears that Defendants did make efforts to clear up the stop order but their efforts were not successful during the period involved in this litigation.

Plaintiff in these circumstances continued selling Defendants' stock until the last sale was made by it on December 29, 1970. After this last sale the account of Defendants carried a balance of the aforementioned 2000 shares of un-

1. This was unregistered stock but per letters furnished Plaintiff by Defendants from their attorney and attorney for DMIC this stock was exempt from registration and was tradeable.

2. Previously on November 3, 1970, Defendant Henry Clay had opened an individual trading account with Plaintiff into which he delivered 5000 shares of DMIC stock. This stock was not purchased from Defendant Clay by Plaintiff, was never sold by Plaintiff and said shares remain in said account for Mr. Clay's disposition. This stock was also subject to the DMIC stop order.

sold stock. When the settlement dates arrived with reference to these sales made by Plaintiff for Defendants the Defendants had been unable to cause the stop order to be removed and thereby make this stock transferable. Within varying but short periods of time after the settlement dates on the respective sales made by Plaintiffs for Defendants' benefit, Plaintiff, in order to consummate the sales it had made as agent of the Defendants, obtained DMIC stock from its own inventory of such stock and against which no stop orders existed and delivered this stock to the broker-buyers in order to consummate the sales. Plaintiff then in due course and diligence called on the transfer agent for DMIC stock to return to it Defendants' stock certificates which had been forwarded by Plaintiff to the transfer agent for transfer and which the transfer agent would not transfer because of said stop order. Certificates for 3700 shares of such stock were received by Plaintiff from the transfer agent shortly before February 17, 1971 and on such date Plaintiff bought on the market 3700 shares of DMIC stock which were required to replace its inventory of shares of this stock which as aforesaid had been used to consummate the sales made per Defendants' instructions. In May, 1971, the certificates for the last 1000 shares of Defendants' stock were forwarded to Plaintiff by the transfer agent, following receipt of which Plaintiff promptly purchased stock on the market in this amount to replace this number of shares from Plaintiff's inventory which as aforesaid had been used to consummate sales made for the Defendants. At this time Plaintiff then had and now has 6700 shares of DMIC stock available for return to Defendants from their joint trading account and because Defendants have received or used the proceeds received on the sales of this stock previously made by Plaintiff, the account of Defendants with Plaintiff carries a debit balance against Defendants and in favor of Plaintiff in the amount of $13,162.50. This figure represents the cost of replacing Plaintiff's inventory of DMIC stock as heretofore recited. Plaintiff seeks judgment against the Defendants for this amount plus interest and attorney fees.

█ From the foregoing factual determinations made by the Court from the evidence presented herein, the Court concludes that Plaintiff is entitled to recovery of judgment against the Defendants in the amount sued for. Contrary to the position of Defendants the Court finds that the relationship between Plaintiff and Defendants was that of principal and agent, i.e., Plaintiff was the agent of Defendants for the sale of their stock and was not purchasing the stock from Defendants for its own account. 12 Am.Jur.2d, Brokers, Sec. 113; Galigher v. Jones, 129 U.S. 193, 9 S.Ct. 335, 32 L.Ed. 658 (1889). Also under the evidence and circumstances in the case the Court finds that the Defendant Henry Clay in all his actions involved herein was acting for and was the agent of his wife and was acting within the scope of his authority. Further, Defendants' position that 2000 shares of DMIC stock they have placed with Plaintiff are missing or were in fact sold by Plaintiff and not accounted for by Plaintiff is without foundation as the evidence clearly discloses and the Court finds that Defendants' account with Plaintiff was always long in the amount of 2000 shares which Plaintiff did not in fact ever sell to anyone. This stock is available to Defendants from their account upon settling their account with Plaintiff.

█ The Court further finds from the evidence that the Defendants directed Plaintiff to sell those shares of their DMIC stock deposited with Plaintiff which were on hand and unsold when the stop order was placed thereon by DMIC. In this situation the Court finds that the Plaintiff was entitled to accomplish the sales so directed by Defendants. Under custom and usage of

the industry[3] as disclosed by the evidence as well as the rules of the National Association of Security Dealers (NASD)[4] the Plaintiff on behalf of Defendants was required to obtain the necessary stock either from its own inventory or the open market to consummate the sales it had effected when Defendants could not deliver transferable stock. Sec. 59(C), Para. 3559, NASD Manual, Uniform Practice Code, provides in pertinent part:

"(C) . . . A 'buy-in' may be executed by a member from its long position and/or from customers' accounts maintained with such member. In all cases, members must be prepared to defend the price at which the 'buy-in' is executed relative to the current market at the time °of the 'buy-in.' "

In this connection the Court finds that the Plaintiff in consummating the sales directed by and made for Defendants from Plaintiff's own inventory of DMIC stock, in calling for the non-transferable DMIC shares of Defendants in the hands of the transfer agent of DMIC and in the purchase of shares of DMIC stock from the open market upon receipt of such non-transferable certificates from the transfer agent were all accomplished with due diligence and timeliness on the part of the Plaintiff.

The Court further finds from the evidence that Plaintiff exercised reasonable and proper diligence in proceeding to sell Defendants' DMIC stock after being notified of the stop order in ascertaining whether the same was a permanent stop order in which event they should not proceed to sell the stock or was merely technical and temporary in nature and would be cleared up in such period of time as would permit the sales to be consummated in the ordinary course of time. The Court further finds and concludes that had Defendants not desired to proceed with the sale of their DMIC stock and bear the responsibility for the consequences thereof after December 3, 1970 when they were notified in writing of the stop order on such stock, Defendants had the duty in these circumstances to notify Plaintiff as their agent not to sell any further shares of their DMIC stock and withdraw the same from their sell order placed with Plaintiff. As found from the evidence herein Defendants not only did not discharge this duty but in fact in the face of the stop order did instruct and advise the Plaintiff to continue selling their DMIC stock placed with it for sale.

It appears that Plaintiff should be allowed a reasonable attorney's fee pursuant to 12 Oklahoma statutes § 936 as Plaintiff's action herein seeks recovery on an open account. Defendants' account with Plaintiff was based on running dealings, the dealings have not been closed, settled or stated and some terms of the account remain to be settled between the parties. Nicholson v. Thixton, 448 P.2d 454 (Okl.1968). If the parties are unable to agree on a reasonable attorney's fee for Plaintiff and incorporate the same in the Judgment entered herein, the Court on motion will conduct an evidentiary hearing thereon.

Based on the foregoing, Plaintiff is entitled to recover Judgment against the Defendants in the amount of $13,162.50 with interest thereon from the 31st day of March, 1971 at the rate of 6% and a reasonable attorney's fee. Defendants are entitled to no recovery against Plaintiff on Defendants' Counterclaim and Judgment should be entered against the Defendants on said Counterclaim dismissing the action contained therein.

If the parties agree on a reasonable attorney's fee for the Plaintiff, counsel

---

3. 12A Oklahoma Statutes 1–205; 12 Am. Jur.2d, Brokers, Sec. 119; United States v. Standolind Crude Oil Purchasing Co., 113 F.2d 194 (Tenth Cir. 1940) (Court will take judicial notice of usage).

4. These rules appear to have the force of law. 15 U.S.C. § 78o–3; Harwell v. Growth Programs, Inc., 315 F.Supp. 1184 (W.D. Tex.1970), reversed on other grounds, 451 F.2d 240 (5th Cir. 1971).

for the Plaintiff will prepare an appropriate Judgment based on the foregoing and include the agreed attorney's fee, submit the same to opposing counsel and then to the Court for signature and entry herein.