Anthony M. SALONE, Jr.,
Plaintiff-Appellant,

v.

UNITED STATES of America et al.,
Defendants-Appellees.

No. 79–1929.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 29, 1981.

Decided April 10, 1981.

Charles Stephen Ralston, New York City (Jack Greenberg, New York City, and Claude V. Sumner, Oklahoma City, Okl., with him on the brief) for plaintiff-appellant.

John E. Green, Asst. U. S. Atty., Oklahoma City, Okl. (Larry D. Patton, U. S. Atty., Oklahoma City, Okl., with him on the brief) for defendants-appellees.

Before HOLLOWAY, BARRETT and WILLIAM E. DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The basic question in this case is whether the award in a Title VII civil rights case, 42 U.S.C. § 2000e et seq., was sufficient. The case before us is the second appeal following a second trial. The first opinion of this court affirmed a denial of a trial de novo following adverse administrative findings. The Supreme Court reversed the affirmance and it directed that the case be remanded for a trial. *See* 426 U.S. 917, 96 S.Ct. 2620, 49 L.Ed. 370 (1976).

The case was tried in the district court and following the trial a judgment was entered in favor of the appellant, Salone. This appeal asserts that the judgment entered was inadequate and that the attorneys' fees were also inadequate. Reversal is sought in these two areas. The government, the appellee herein, does not have

any fault to find with the judgment as entered. It opposes, however, any upward modification of that judgment.

The plaintiff-appellant, Anthony Salone, has been a civilian employee at Tinker Air Force Base in Oklahoma City since May 1947. The initial action was commenced in 1973 following a final decision of the Civil Service Commission which referred the decision to the Department of the Air Force. It had denied Salone's claim that he had been discriminated against on the basis of race in regard to certain employment opportunities or promotion possibilities. Also denied was Salone's claim that he had suffered reprisal because he had filed an earlier complaint of discrimination.

As we indicated briefly above the United States moved for summary judgment upon the administrative record and the decision of the Agency. The district court granted that motion and held that the plaintiff was not entitled to a trial de novo of his claims of discrimination reprisal. That decision was affirmed by this court, 511 F.2d 902 (1972) and the petition for certiorari was filed and was granted. The judgment entered by the district court in the first case and approved by this court directed that the case be remanded for reconsideration in the light of the Supreme Court's decision in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), which case had held that federal employees were entitled to a trial de novo, rather than administrative review of their claims of discrimination under Title VII.

Following remand to the district court the case was sent back to the United States Civil Service Commission for further consideration. That body sent it to the Agency for a new decision. The Agency rejected the complaints and the examiners' holding and the second action was then filed in the district court and the two actions were consolidated.

In March 1979 a five day trial took place on the merits of the case. Live testimony and documentary evidence was presented. At that trial the United States did not contest the issue of discrimination against Salone based on his race (Mr. Salone is black). Indeed, the government's proposed findings of fact acknowledged that there had been discrimination. Thus, the case boils down to how much should be awarded.

The plaintiff took the position that he ought to have been placed in a higher G.S. level. He reasoned that in the absence of the earlier discrimination he would have advanced in a manner similar to comparable white employees who had not been discriminated against.

The district court issued an opinion holding that the plaintiff had been a victim of discrimination and that he was entitled to be retroactively promoted to a G.S.–7 as of 1970 and a G.S.–8, step 1 as of 1972 and was also therefore entitled to back pay to make up the differences between those salaries and the salaries which he received as a G.S.–5 employee. Subsequently a hearing was held on the issue of attorneys' fees. The trial court announced that any counsel fee recovery would be limited to one-third of the back pay recovery. Thereupon the court entered a judgment granting a total of $15,544.32 in back pay and $5,181.44 or one-third in counsel fees. It was first contended by the plaintiff that he should have been promoted to higher levels following the G.S.–8, step 1 advancement which was made by the court in 1972. He claimed that it had not been shown that he would not have normally advanced absent the discrimination. The second contention was that the attorneys fees were inadequate; that they did not consider the amount of time that was spent and did not take into account that there were two court proceedings on appeal to this court and to the United States Supreme Court in order to obtain relief for the plaintiff. It was argued that the award of a flat fee following all of this litigation over a long period of time was out of harmony with law applicable to the calculation of attorneys' fees in civil rights cases. The trial court denied the motion to alter or amend and held that the plaintiff-appellant would not have advanced above a G.S.–8, step 1 in the time since 1972 because he was a troublemaker

and that his work had been unsatisfactory. As to the attorneys' fees the court held that the amount requested was unreasonable but did not make any findings of fact to support this conclusion. Timely notice of appeal was filed and the case eventually was placed on the calendar.

The evidence shows, as has previously been noted, that the appellant's first employment was a Wage Board or blue-collar employee in 1947 and that he did not file a complaint of discrimination until 1967. After that he was promoted to a G.S.–5, supply clerk position. He remained there until 1979. After he had received what he regarded as an unsatisfactory discriminatory performance appraisal, he filed the present complaint.

In the most recent hearing before the Civil Rights Commission it was concluded by the examiner that the evidence was overwhelming that because of previous discrimination complaints which he had pursued in 1967 and 1970 Salone had been branded as a troublemaker and had in numerous respects been treated differently than whites, and in many cases differently from other blacks who had not filed discrimination complaints. The Air Force refused to recognize the decision of the Civil Service Commission in 1973. At the hearing before the district court in 1979 the witnesses who had provided affidavits and who had testified at the administrative hearing gave testimony. This evidence showed not only that there had been discrimination but also that he was a good and conscientious worker. From other sources there was testimony that he was a troublemaker. The supervisor testified at the trial that there had not been discrimination. However, as has been shown, the government did not contest that discrimination had indeed taken place; but instead it emphasized the nature and character of the relief which was to be granted. The testimony relating to the period after 1972 showed that he had received performance appraisals in the high 90s on a scale of 100. In 1976 he was recommended for an outstanding performance rating. Salone also testified that he had in excess of three years of college education. He stated that he believed that he would have advanced to a G.S.–14 or 15 level if he had been provided equal employment opportunities early in his career.

Further testimony showed that at Tinker Air Force Base it was unnecessary to apply for positions as they became available. Profiles were developed by computer of all employees who had the eligibility for positions, and those eligible were contacted to ascertain if they were interested. Salone had been contacted in a period from 1972 for some G.S.–6 positions but had declined some on the ground they were dead-end and could not lead to further advancement. He had not declined others and although he had been considered for a number of G.S. positions, had never been promoted. The trial court in its findings has stated that Mr. Salone was in fact a troublemaker and did not perform his duties satisfactorily. However, these findings were at variance with the position which the government took admitting that he had been labelled as a troublemaker because of having filed discrimination complaints and that his performance on the job was satisfactory. Following the trial court's decision Salone was advanced to the position of a freight rate specialist, a G.S.–8, step 1 level retroactive to 1972. This position ranges from a G.S.–7 to G.S.–12, depending on the amount of responsibility. It apparently is a job series for which promotions to higher levels may be achieved because of an increased level of responsibility and performance and that this can be accomplished without competitive bidding.

I.

Was the plaintiff entitled to be upgraded beyond the G.S.–8 rating that he finally received?

There is a good deal of evidence concerning this charge, that the plaintiff was a troublemaker. At the same time there is ample evidence that he was a good workman and that he had been trying hard to better himself both by gaining additional

education and by working hard. His ratings were good and he was considered for other positions. However, the trial court found:

4. That the plaintiff is known by all his co-workers, both supervisory and otherwise, as a troublemaker. He has earned this label because he has gone out of his way to create turmoil and controversy; however, he has been discriminated against because of his color.

* * * * * *

5. Plaintiff has been a victim of this discrimination, although a good part of the reason for his not being promoted was because he is a troublemaker.

6. That plaintiff's performance in his job is satisfactory.

22. That the plaintiff is properly before this Court and has sustained his burden of discrimination in his employment herein.

So the evidence is contradictory; on the one hand it shows that he had a highly satisfactory job performance and at the same time he was held to have been a troublemaker. This latter is rather difficult to understand in view of the fact that his performance ratings were extremely high. Nevertheless the evidence in the record is sufficiently strong to sustain that his job performance was good or satisfactory and that he had been labelled as a troublemaker because of his assertion of his rights.

 The evidence shows that periodic step increases for General Schedule employees are automatic if the employee's work is of an acceptable level of competition as determined by the head of the Agency. 5 U.S.C. § 5335. The purpose of Title VII is to put the plaintiff in the place he would have been but for the discrimination. Under the statute he is entitled to get all the benefits that he would have had had there not been discrimination. Unquestionably Mr. Salone would have received his annual step increases for the G.S.–7 rating from 1970 to 1972. Moreover he would have received the step increases for the G.S.–8 after 1972 to the point where he was advanced. Unfortunately for Mr. Salone

there is no evidence in the record that he would have advanced to a higher *grade* after 1972 if at that time he had had a G.S.–8. We have no evidence in the record as to the vacancies which were available, the requirements of those jobs nor do we have any way to determine Mr. Salone's hypothetical experience in his retroactive promotion to G.S.–8. The effective 118 months or so as G.S.–8 is perhaps not unusual. There is evidence which, if it had been accepted, would have justified award of a higher rating but there is also evidence which supports the ratings which were given.

All in all we are unable to conclude that the trial court's determination as to the grade that Mr. Salone should have had was clearly erroneous. The trial court, as the trier of the fact, must be upheld in the absence of evidence showing that the determination was clearly erroneous. For that reason the decision of the trial court as to the grade that Mr. Salone would have had, that is the G.S.–7 to 1972 and the G.S.–8 thereafter, cannot be set aside. However, there is need to modify the decision as to the steps in the grade which he would have had with the ratings which were given him during the periods in question, that is 1970 to 1972 and 1972 forward. Inasmuch as the specific information relative to step increases and the salary changes for the years in question which would have been given is not in the record, the case must be remanded for the purpose of ascertaining what they are and for the purpose of awarding these increases to the plaintiff-appellant.

## II.

Was the award of attorneys' fees inadequate for the record and is the appellant entitled to a rehearing on this issue? We hold that he is.

A 1972 amendment to the Civil Rights Act is concerned with attorneys' fees and reads as follows:

(k) In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, oth-

er than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k) (1976).

The question is whether the trial court's measurement of the attorneys' fee in terms of the one-third of the back pay award to Mr. Salone in the amount of $5,181.44 was erroneous. An effort was made to persuade the court to amend the judgment. The court said to this:

> The court has already awarded a reasonable attorneys' fee in this case. What plaintiff seeks is entirely unreasonable and not in keeping with the value of the services rendered nor justified when compared with the result obtained.

There was evidence in the record consisting of affidavits from several attorneys involved in the case from the time of the administrative procedures, the appeals, the Supreme Court petition, the trial and the second appeal. These affidavits appear to have been submitted with a motion to amend the judgment. The transcript reflects a short hearing to determine "[W]hether the court would go on an hourly basis or a percentage basis on the amount of the award." From the transcript it is to be inferred that the only factor considered by the judge was the size of the back pay award to be entered into the one-third formula.

The plaintiff asserts that the fee awarded is small in relationship to the complexity of the case and the number of hours (245) of lawyer time involved in it. Plaintiff argues further that the purpose of the Civil Rights Statute is to make the plaintiff whole and that the inadequate attorneys' fee defeats that purpose. The amount prayed for was $20,045.00. We are not saying that this is a reasonable fee but it does relate to the great amount of time spent, the complexity of the proceedings, including the several appeals. In support of his position the appellant cites *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) which sets forth a number of factors in the ABA Code of Professional Responsibility.

The Tenth Circuit has not followed any fixed standard in setting attorneys fees in Title VII cases. However, in *EEOC v. Safeway Stores, Inc.*, 597 F.2d 251, 253 (10th Cir. 1979), this court did tend to follow the *Johnson v. Georgia Highway Express, supra*, standards and the court said that where the plaintiff has prevailed in a civil suit he is not, "necessarily limited to a back pay award" and that "[t]here are many factors to be considered, and the size of any monetary award is but one." Considered in that case were a great variety of factors and this court did not disprove the method used by the trial judge. Similarly in *Carreathers v. Alexander*, 587 F.2d 1046, 1052 (10th Cir. 1978) it was said that "[t]he trial court is entitled to demand ... a number of items, such as the nature and extent of services, the time required, the results accomplished, the value of the matter and the professional skill and experience of the attorney." The court also said "that the hours expended by the attorney is not the sole factor." *Brito v. Zia Company*, 478 F.2d 1200 (10th Cir. 1973) holds to the same effect but it approved in 1973 a $12.00 per hour award. We conclude that the standards as set forth in *Johnson v. Georgia Highway Express, supra*, should generally be applied where attorneys' fees are authorized. *Battle v. Anderson*, 614 F.2d 251 (10th Cir. 1979); *E.E.O.C. v. Safeway Stores, supra*. Although *Battle* adopted standards for attorneys' fees by following the legislative history of 42 U.S.C. 1988, we believe that it presents a parallel situation and its reasoning should apply to Title VII attorneys' fees awards as well. The case should be remanded to the district court for a hearing on attorneys' fees and should include a reasonable fee for the present appeal.

\* \* \* \* \* \*

In summary then, our conclusion is that judgment should be affirmed in large part and that it should be reversed for the purpose of computing the step increases which would accrue to the plaintiff herein considering that he had the G.S.–7 grade for

1970–1972 and the G.S.–8 grade from 1972 onward until such time as he was granted a new position. The cause must be remanded, as we say, in order to receive evidence and to draw conclusions as to the added amount. There must also be a hearing on the matter of attorneys' fees which applies the standards as previously discussed.

Accordingly then the judgment of the district court is affirmed in large part. It is reversed in the particular noted and it is remanded to the district court for further proceedings consistent with the views expressed herein.