J. R. FULTON, d/b/a J. R. Fulton & Company, Plaintiff-Appellee,

v.

L & N CONSULTANTS, INC., Defendant-Appellant.

No. 79–1841.

United States Court of Appeals, Tenth Circuit.

May 18, 1982.

Rehearing and Rehearing En Banc Denied Oct. 28, 1983.

Kenneth I. Jones, Jr., Oklahoma City, Okl. (Eagleton, Nicholson & Pate, Oklahoma City, Okl., were also on brief), for defendant-appellant.

Michael L. Darrah, Oklahoma City, Okl. (Procter, Fleming & Speck, Oklahoma City, Okl., were also on brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is an appeal brought by defendant L & N Consultants, Inc. from a judgment awarding $47,458.90 for the recovery of real estate brokerage fees and $9,500 for attorney's fees to plaintiff, J. R. Fulton, d/b/a J. R. Fulton & Company.

I

Plaintiff Fulton, a licensed Oklahoma real estate broker, entered into a real estate brokerage agreement with defendant L & N to be effective from December 10, 1975 until June 10, 1976 covering certain commercial property in Oklahoma City, Oklahoma. Specifically the agreement concerned the sale of a large warehouse building plus 23 acres of vacant land known as the "Plaza III Industrial Park." Subsequently these parties entered into a supplemental agreement which extended the listing agreement to December 10, 1976. The supplemental agreement extended the previous agreement under the same terms and conditions except that it provided that if the property was sold to a non-Oklahoma entity by the defendant without any assistance from the plaintiff, the plaintiff would be entitled to a three percent commission.[1] This was a commission reduction from that provided by the original exclusive contract, which called for the payment of a six percent commission, regardless of who sold the property. (II R. Pl. Exs. 1 and 2).

During the term of the supplemental listing agreement defendant L & N began negotiations with one Stanley Robert Fimberg concerning the sale of the Plaza III property. The progress of the negotiations is a matter in dispute but there is evidence that these discussions began in September 1976. As the negotiations continued it became clear that the parties contemplated that a limited partnership would be syndicated by Mr. Fimberg and that the partnership would be the purchaser of the property. Subsequently, Mr. Fimberg formed a limited partnership known as Vermont Street Associates, Ltd., on December 14, 1976. Defendant L & N and Vermont Street Associates, Ltd., executed a written agreement for the sale of the Plaza III property. This agreement stated that it was "made and entered into as of the 1st day of September, 1976."[2] In addition a promissory note, a mortgage-security agreement, and a warranty deed were executed. The mortgage-security agreement recites that it is executed "as of the 1st day of September, 1976, on this 16th day of December, 1976." In addition, the promissory note recites that it was "to be executed as of the day and year first above written" that day being September 1, 1976.

Plaintiff Fulton brought this action in the district court asserting two causes of action in the alternative. In the first cause of action judgment was sought in the sum of $72,000 for the failure of defendant to accept a purchaser procured by the plaintiff Fulton for the Plaza III property, plus interest, costs, and attorney's fees. On the second cause of action judgment was sought for $41,310.00, plus costs and attorney's fees, for the failure of defendant L & N to pay a three percent commission on the sale of defendant's property to a non-Oklahoma entity without the assistance of plaintiff.

---

1. The pertinent paragraphs of the supplemental agreement provide (II R. Pl. Ex. 2):

    1. If any of the property is sold by Lomas & Nettleton with no assistance from J. R. Fulton & Company, and to a non Oklahoma entity, then we will pay your company a three percent (3%) commission.

    \* \* \* \* \* \*

    4. The term of this agreement shall be from June 10, 1976, to December 10, 1976, unless sold, in which case this agreement may be terminated at the time of closing.

2. The Agreement of Sale had provisions in its opening and concluding paragraphs which contained relevant recitations concerning the September 1 date. Those paragraphs read respectively as follows:

    THIS AGREEMENT OF SALE, made and entered into as of the 1st day of September, 1976, by and between L & N CONSULTANTS, INC., a Nevada corporation ("Seller"), and VERMONT STREET ASSOCIATES, LTD., a Texas limited partnership ("Purchaser");

    \* \* \* \* \* \*

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

The trial court granted defendant's motion to dismiss as to plaintiff's first cause of action, but overruled the motion as to the second cause of action.

The defendant asserted that recovery should not be had by plaintiff for the reasons that there was no sale within the life of the listing agreement and, in any event, the plaintiff was not the procuring cause of the sale.

The second cause seeking the real estate commission was tried to the court. The main issue at trial was whether the agreement of sale was executed by December 10, 1976, so as to be within the life of the extended listing agreement. There was no claim by plaintiff that defendant L & N and Vermont Associates delayed execution of the agreement of sale so as to permit the brokerage agreement to expire. (III R. 29–30).

During trial, the court sustained an objection by plaintiff Fulton to defendant L & N's evidence concerning when the agreement of sale was executed and what terms remained open for negotiation after expiration of the brokerage agreement on December 10, 1976. This objection was sustained on the basis of the parol evidence rule. In a memorandum opinion granting judgment for the commission and attorney's fees to plaintiff Fulton, the trial court found that plaintiff was not a stranger to the contract because his rights were affected thereby and that he could properly object to the admission of parol evidence. (I R. 295). The court found further that

> The Agreement of Sale between the defendant and Vermont Streets Associates, Ltd., is complete and unambiguous. The contract reflects the date of execution to be September 1, 1976. No conflicting date is apparent in the instrument. The date is not ambiguous, but clear from the four corners of the document. In this instance, the date of execution is a material element of the contract. Parol evidence is thus inadmissible to vary or contradict the date of execution. (I R. 297).

The court further held in the alternative that the defendant's offer of proof "is insufficient, in the face of the evidence presented, including the written agreement, to dissuade the Court from its finding that the Agreement of Sale was agreed upon and executed within the term of the extended listing agreement." (I R. 297). The court noted that "defendant's offer of proof included examination of a witness, including cross-examination by plaintiff, and the submission of numerous documents. The record thus appears to be as complete as though the Court had reserved ruling on the parol evidence issue until after trial." (I R. 295).

It was also found that this sale was accomplished without plaintiff's assistance and that under the extended listing agreement, plaintiff Fulton was entitled to a commission of three percent of the sale price, and interest. Finally the court held that plaintiff is entitled to recover attorney's fees under 12 O.S.1971 § 936 because this was an action to recover for the services of a real estate broker.

On appeal, defendant L & N argues that plaintiff was not entitled to the commission under the brokerage agreement which expired before execution of the agreement of sale, claiming error in (1) the exclusion of evidence as to the date of actual execution of the agreement of sale and as to when agreement was reached on all essential terms of the contract; (2) the finding that an enforceable agreement of sale existed on or before December 10, 1976, which is clearly erroneous; and (3) in awarding attorney's fees to the plaintiff and in doing so without a proper hearing.

## II

As noted, the trial judge made two key rulings which led to the entry of judgment for plaintiff Fulton. First, on the basis of the parol evidence rule he rejected proof offered to show that the agreement for sale of the Plaza III property was not actually entered into until after expiration of the

brokerage agreement on December 10, 1976. In evidence there remained the Agreement of Sale which recited that the agreement was "made and entered into as of the 1st day of September, 1976 . . . ." Second, the trial judge alternatively held that the offer of proof was insufficient in any event to dissuade him from his finding that the agreement of sale was agreed on and executed within the term of the extended listing agreement.

The offer of proof, which was excluded, was made in the following manner. Mr. Brannian, an attorney of Dallas, Texas, who represented Mr. Fimberg, was first permitted to testify. Further, the attorney for defendant L & N stated on the record an offer of proof as to what the testimony would be by Mr. Lucas, an attorney who represented L & N in connection with the sale, and by Mr. Fimberg, the general partner of Vermont Associates. In addition, several documents were tendered, all showing execution dates of December 15 or 16, 1976, after expiration of the extended brokerage agreement. This entire offer of proof was excluded by the trial judge.

In his testimony Mr. Brannian, the Dallas attorney, discussed the execution of the agreement of sale. He said that he witnessed the execution of the agreement in Dallas by Mr. Fimberg for Vermont Associates, the purchaser, on December 16, 1976. He testified that an all-inclusive mortgage-security agreement, a warranty deed and an all-inclusive promissory note (Defendant's Exhs. 13, 14 and 15) were all executed at the same time as the agreement of sale on December 16, 1976.

Mr. Brannian stated further that material terms of the contract had not been agreed on as of December 10. More specifically, he said that terms for the payment of additional consideration of $150,000, the form of the mortgage, liability for payment of certain sums due under the promissory note, a non-competition agreement, and the question whether the property could be sold without the mortgagee's consent, had not

been agreed on before expiration of the brokerage agreement on December 10. (III R. 58–59). Further Mr. Brannian said that until Vermont Associates had filed its articles of limited partnership with the Secretary of State, it could not complete the sales transaction; until the limited partners contributed the capital, the purchase could not be made. (III R. 59–60).

On cross-examination, it was developed that Mr. Brannian had testified by deposition that the "basic" terms of the sale had been agreed on in September or early October, 1976, and that such terms included the purchase price and manner of payment. In addition, Mr. Brannian admitted that the "concept of paying $150,000, based upon a cash flow, had been agreed to" as of September 17, but "[t]he manner of determination of the cash flow and how that was determined . . . and what cash flow was" had not been determined. Lastly, it was brought out that the purchase price proposed earlier turned out to be the exact amount called for in the closing of the transaction. (III R. 61–64).

In addition, an offer of proof was made as to what the testimony would have been by Mr. Lucas, an attorney representing L & N, if he had been permitted to testify. Defense counsel said that Mr. Lucas would testify that he was present in Dallas on December 16 when the agreement of sale and all the related documents were executed at the same time as part of the same transaction; that as of December 10, the conditions of the $150,000 note had not been agreed on and consent of the first mortgage holder to sale of the property had not been received. (III R. 69, 70). Defendant L & N further offered to show that Mr. Fimberg would have testified that the agreement of sale and other closing documents were executed on December 15 and 16, 1976; that the agreement was back dated for tax purposes.

Lastly, defendant L & N offered the certificate and articles of limited partnership, stating that the partnership was prohibited

from conducting business in Oklahoma; that under the terms of the agreement the limited partnership would not exist until the articles were filed with the Secretary of State in Texas. The certificate and articles of limited partnership filed in Texas were offered, reflecting they were not filed until December 14, 1976.

It was this offer of proof, as detailed above, which was excluded on the basis of the parol evidence rule, to which we now turn.

## III

Defendant argues first that the evidence offered, by which it sought to establish that the agreement of sale was not actually executed until after expiration of the extended listing agreement, was erroneously excluded. It contends that the plaintiff, as a third party to the contract between it and Vermont Associates, was not entitled to invoke the parol evidence rule and that in any event such evidence, showing merely the true execution date, was not barred by the rule.

■ The parol evidence rule in Oklahoma is embodied in 15 O.S.1971 § 137, which provides:

§ 137. Writing excludes oral negotiations or stipulations

The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument.[3]

■ The general rule in Oklahoma is that the parol evidence rule only applies to parties to the agreement and their privies. *In Re Assessment of Alleged Omitted Property*, 177 Okl. 74, 58 P.2d .134, 137; *In Re McClain*, 447 F.2d 241, 244 (10th Cir.), *cert. denied*, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (applying Oklahoma law); *Trane Company v. Bearden Plumbing and Heating Company*, 463 P.2d 350, 352 (Okl.).[4] The parol evidence rule has been relaxed where a stranger to the writing is involved. 3 Corbin, Contracts § 596 (1960). Moreover, it has generally been held that the parol evidence rule does not apply in cases where real estate brokers are suing for commissions and where the rule is invoked to confine the evidence to the written contract between the principal and the purchaser. 32A C.J.S. Evidence § 861 (1964).

Furthermore, it has been held that parol is admissible to show the date of execution

---

3. The rule is a part of the substantive law of Oklahoma, rather than its adjective law. *Snow v. Winn*, 607 P.2d 678, 682 (Okl.); *Investors Royalty Co. v. Lewis*, 185 Okl. 302, 91 P.2d 764, 766. Thus Oklahoma law is controlling on the issue in this diversity action.

4. Our court has made similar holdings under the law of other states. *E.g., Bardwell v. CIR*, 318 F.2d 786, 790 (10th Cir.); *American Crystal Sugar Co. v. Nicholas*, 124 F.2d 477, 479 (10th Cir.). The district court distinguished these cases on the ground that parol was admitted in both instances, and served only to explain the manner in which the contract was to be carried out, and that the parol would have been available to the parties so that logically a stranger could not cause its exclusion. We are not persuaded by the distinction. For reasons explained below in the text, we feel that the parol here was also available to the parties to prove the true execution date, if the date of actual execution became an issue between the parties, which is the case here.

Secondly, the district court reasoned that the plaintiff broker in the instant case is not a stranger to the contract because his rights were in existence and known to the contracting parties and the possibility of the agreement of sale was contemplated by. the brokerage agreement so that his rights were "affected" by the agreement of sale. Again, we disagree. As noted below, we conclude that the plaintiff broker is a "stranger" to the agreement of sale in the sense in which the term is used in parol evidence decisions; his interest is not aligned with or related to protection of the integrity of actual terms agreed on in the agreement of sale. His reliance on the rule is asserted from the position of a third party who is not defending any term actually agreed on in the agreement of sale and the use of the rule would bar proof of a separate matter not stipulated by the written agreement—the true date of execution.

of a deed conveying land when such date is in dispute. *Randolph v. Mullen,* 73 Okl. 199, 175 P. 512, 513; *see Kilgore v. Parrott,* 197 Okl. 77, 168 P.2d 886, 889 (parol proof admissible as to whether there was actual delivery of a deed of conveyance); *In re Spencer's Inc.,* 61 Wash.2d 267, 377 P.2d 880, 884 (parol proof admissible as to date of actual taking of possession by vendee on date other than contract date); 3 Corbin, Contracts § 577 (1960).[5] Here the agreement does not state that it was executed *on* any given date and its recitation that it was "[m]ade and entered into *as of* the 1st day of September, 1976" (emphasis added), which could well serve other purposes, leaves the date of actual execution undecided.[6] *See United States v. Munro-Van Helms Co.,* 243 F.2d 10, 13 (5th Cir.); *Matter of Prior Bros. Inc.,* 29 Wash.App. 905, 632 P.2d 522, 526. Moreover, even if the recital were viewed as stating that actual execution of the agreement of sale occurred on September 1, 1976, "[a] recital of a fact in an integrated agreement may be shown to be untrue." Restatement (Second) of Contracts § 218(1) (1981).[7] Thus evidence to prove the true date of execution is admissible without violation of the parol evidence rule.

In sum, we conclude that it was error to sustain the parol evidence objection by the real estate broker to evidence attempting merely to establish the actual date of execution of the agreement of sale. Nor can we agree with the court's reasoning that the plaintiff broker was "affected" by the Agreement of Sale to the extent that he could invoke the rule. The broker was not a party to the contract of sale and he was not in privity with a party to the agreement. Therefore, plaintiff had no such relationship to the contract and no such interest in the integrity of its terms as to entitle him to invoke the exclusionary rule.

### IV

We feel that defendant's offer of proof did tender a plausible basis for findings that a binding agreement of sale was not entered into within the life of the extended listing agreement and that the commission was not due. We conclude that it was error to exclude the offer of proof and we remand, as further explained below.

The trial court held that "the factor determining whether the plaintiff is entitled to his commission is whether an enforceable agreement for sale had been reached within the term of the contract." (I R. 297). We agree with this interpretation of plaintiff's rights under the provision of the extended listing agreement for a commission "[i]f any of the property is sold . . ." by L & N without Fulton's assist-

---

**5.** "At all events, no one doubts that the execution of a written contract has to be proved. Some parol testimony is required to prove the 'execution' of the document—the genuineness of the signature, the delivery as a true offer or acceptance or both, the expression of assent by each party." 3 Corbin, Contracts § 577 (1960).

**6.** In fact, in Article VI, § 6.02 of the Agreement of Sale, one purpose of reference to the September 1, 1976, date is apparent. Section 6.02 provides:

> 6.02. *Proration of Taxes, Rents, Interest, Expenses, etc.* Rent, taxes and all costs and expenses relating to the operation of the Property will be prorated at the Closing, effective September 1, 1976. . . .

Thus the recitations that the Agreement of Sale was made and entered into "as of" September 1, *see* note 2, *supra,* had a distinct purpose in connection with proration of taxes and other items, and did not purport to state the date of actual execution.

**7.** Comment b to § 218 states:

> *b. Effect of recital.* A recital of fact in an integrated agreement is evidence of the fact, and its weight depends on the circumstances. Contrary facts may be proved. The result may be that the integrated agreement is not binding, or that it has a different effect from the effect if the recital had been true. In the absence of estoppel, the true facts have the same operation as if stated in the writing. *See also, Stuart v. Crowley,* 195 Wis. 47, 217 N.W. 719, 722; *Flynt v. Garmon,* 275 S.W. 444, 447 (Tex.Civ.App.) (recital of consideration in a deed of grant is generally not conclusive, and true consideration may be shown by parol evidence).

ance to a non-Oklahoma entity. Note 1, *supra; see Gilliland v. Jaynes,* 36 Okl. 563, 129 P. 8, 10 (commission due if the purchaser and vendor enter into a "valid, binding, and enforceable contract").[8] It was critical, therefore, that an enforceable written agreement be shown to have been executed by December 10 for the commission to have been due. The offer of proof clearly dealt with this issue.

It is true that there was testimony, which the trial court was free to accept, that there were negotiations and that oral agreements were made before expiration of the extended listing on December 10. There was testimony that plaintiff was contacted by Tom Dodds, a loan officer of L & N Consultants, concerning the making of an agreement for sale well before expiration of the extended listing agreement. Plaintiff Fulton testified that

all during the period of October, the end of October and November [Tom Dodds] had informed me that a sale was agreed upon, that the closing was imminent and on two or three different occasions said it was going to happen the following Monday morning. (VI R. 20, 21).

When asked why Mr. Dodds contacted him in the first place, plaintiff replied that

Mr. Dodds had rejected our contract that we had because he had a substantial-

ly better offer. He came by to tell us that the sale was made, the closing documents were being prepared and he wanted to negotiate the actual amount of commission that J. R. Fulton was to receive because of other provisions in the contract which would change the consideration, the total consideration. (VI R. 22, 23).

This first meeting regarding the sale of the property took place at the end of September or the first of October. (VI R. 22).

Plaintiff testified further that his company continued negotiations with certain prospective purchasers for the sale of the property after October 1, 1976, although it terminated its advertising effort in early October upon learning that for all practical purposes the property had been sold. (VI R. 40, 43–44). He testified that his company had a policy of continuing on with the prospects until the closing date as a matter of course and that he was never advised that the purchaser may have been having problems raising the necessary capital. (VI R. 40, 41). Plaintiff testified that he was first notified that the deal had been closed by Mr. Dodds on December 10th or 11th.

Mr. Dodds testified that as of September 17, 1976, the full purchase price for the property had been determined. He said that as of October the major business as-

---

**8.** The general rule in Oklahoma is that "unless it is expressly provided otherwise in the terms of the employment, a commission or brokerage fee is not due unless and until a contract satisfactory to the principal is actually executed or unless the broker is instrumental in producing a responsible person who is ready, able and willing to enter into a contract conforming to the terms outlined in the employment of the broker." *J.P.C. Petroleum Corp. v. Vulcan Steel Tank Corp.,* 118 F.2d 713, 717 (10th Cir.) (applying Oklahoma law). The latter theory for recovery of a commission based on the broker's producing a responsible person, ready to enter a purchase agreement, is not involved here. Oklahoma law is in accord with that of most states in denying recovery of a broker's commission where the agreement between the principal and the proposed purchaser is oral and none of the exceptions to the rule apply. Annot. 12 A.L.R.2d 1410, 1416 (1950). Although generally a contract of sale is specifical-

ly enforceable only when reduced to writing, *Gilliland v. Jaynes, supra,* 129 P. at 10, a principal may still be liable for a commission if the purchaser's failure to execute an agreement is due to the principal's refusal to do so. *Smith v. Gibraltor Oil Company,* 254 F.2d 518, 522 (10th Cir.).

Here no claim was made that the defendant delayed execution of the agreement of sale so as to permit the brokerage agreement to expire. (III R. 29–30). Plaintiff does make an appellate assertion that there was in existence an executory contract of sale as of September 1976 and that "[n]othing remained to be done regarding this sale other than formal closing, which was delayed to deprive Plaintiff of his commission." (Brief of Appellee at 16). No citation of evidence is furnished to support this claim of delay and we find none, and the theory was not argued below. Therefore we do not consider it.

pects of the deal had been agreed on. He conceded that he probably told plaintiff in October 1976 to abandon his sales efforts because the property had been sold. (V R. 22–47).

Nevertheless, the testimony admitted and offered did not conclusively establish that the execution of the agreement of sale occurred on or before December 10. The evidence pointing to the September 1, 1976, date was the recitation in the Agreement of Sale that it was "made and entered into as of the 1st day of September, 1976" and similar recitations in other instruments of effectiveness "as of" September 1 and testimony outlined above. And we note again that the plaintiff broker did not claim that defendant L & N and the purchaser delayed execution of the agreement of sale so as to permit the brokerage agreement to expire. (III R. 29–30).

█ We conclude that the offer of proof was sufficient to support a finding that the actual execution of the agreement of sale did not occur during the life of the listing agreement, contrary to the finding made. Although the trial judge's memorandum states that the offer of proof was insufficient to dissuade him from finding that the agreement was made on September 1, his basis for this is not clear, i.e., whether the judge refused to accept and believe the proffered evidence indicating that the date of actual execution was after expiration of the listing agreement, or whether the written Agreement of Sale with its recitation of being made and entered into "as of" September 1 was viewed as conclusive that the actual date of execution was September 1. The latter view seems more likely to have been the basis of the ruling in light of the court's statement that the "contract reflects the date of execution to have been September 1, 1976."

█ In any event, the ruling on the parol evidence objection resulted in a determination on the crucial date of actual execution without the trial judge observing two witnesses, Messrs. Lucas and Fimberg,[8a] who would have testified that the actual execution of the agreement of sale occurred after the December 10 expiration of the listing agreement. Moreover, the parol evidence ruling may have resulted in the omission of evidence by the plaintiff broker bearing on the actual execution date. Immediately after the ruling was announced the plaintiff rested; he had prevailed on his parol evidence objection and offered no further evidence as to the date of execution of the agreement of sale. Therefore, there must be a remand in order that relevant evidence may be presented by both parties on the critical issue as to the actual date of execution of the enforceable agreement of sale, and that findings may be made thereon.

In this connection we add this clarifying comment. We are not holding that plaintiff's commission would not be due just because some of the closing documents, such as a conveyance, were not executed during the life of the extended listing agreement. If an enforceable agreement of sale is found to have been executed during that period, then under this listing agreement and the theory the plaintiff has relied on, the commission would be due.

## V

Due to the fact that attorney's fees for the prevailing party will likely need to be determined again on remand, we will also address claims of error in the awarding of attorney's fees, despite the fact that we must set aside the judgment for reasons already given.

The trial court awarded attorney's fees to the plaintiff in the amount of $9,500.00. Defendant argues that this case is not a proper one for the recovery of any attorney's fees, that there was insufficient evi-

---

8a. Mr. Fimberg's deposition, which addressed the date of actual execution, was offered by plaintiff and admitted in connection with defendant's offer of proof. Nevertheless, as noted in the text, the judge did not observe the witness and have the impact of the testimony before him.

dence to justify the award, and that in any event it was entitled to a hearing on this issue instead of a determination on an inadequate affidavit. We agree with the trial court that this is a proper type of case for the award of fees. We conclude, however, that there should be a hearing to determine a proper fee, with more complete evidence called for by the Oklahoma law on the award of such fees.

■ The award of attorney's fees is authorized by 12 O.S.1971 § 936 in actions for recovery of compensation "for labor or services," *inter alia*.[9] The right of a real estate broker to recover attorney's fees under the statute has been recognized. *See Bentley v. Hardin*, 577 P.2d 471, 475 (Okla. Ct.App.);[10] *Bache & Co. v. Clay*, 366 F.Supp. 1248, 1251 (W.D.Okla.). Defendant argues that the plaintiff did not render any services in connection with the sale of the property to Vermont Associates and is not entitled to recover attorney's fees. We agree with the trial court that this action was one to recover for services of a real estate broker and that fees were recoverable, despite the provision for calculation of a fee if the property was sold without the broker's services.

The question remains as to whether an evidentiary hearing should have been held on the fees. Before the court's memorandum opinion was filed an affidavit was submitted by the plaintiff which furnished some general information on the services of

plaintiff's attorney.[11] In his memorandum opinion the trial judge determined that the plaintiff was entitled to attorney's fees and ordered the defendant to submit a response within ten days on the amount of the fee. In its response defendant objected to the determination being made without a hearing and asserted that there was insufficient information in plaintiff's affidavit for determining the fee. (I R. 301).

Without a hearing or further proceedings the trial judge entered an order pointing out that judgment had been awarded to plaintiff, with interest, in the amount of $47,458.90, that plaintiff's counsel had furnished an affidavit showing that 125 hours had been spent in prosecuting the case, that the court had knowledge of the facts by presiding over various proceedings; and that in accord with Rule 78, F.R.Civ.P. and Local Rule 13(a), the fee should be determined, and plaintiff was awarded $9,500 in attorney's fees.

■ We must agree that the evidentiary hearing requested by defendant should have been held. *See Del Rey Air v. Expressway Airpark, Inc.*, 468 F.2d 187, 189 (10th Cir.), (applying 12 O.S.1971 § 936); *Salone v. United States*, 645 F.2d 875, 878 (10th Cir.), *cert. denied*, 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208; *Matter of Permian Anchor Services, Inc.*, 649 F.2d 763, 768 (10th Cir.). The necessity for such an evidentiary hearing was not obviated by the provisions on motion days in Rule 78, F.R.Civ.P., permit-

9. 12 O.S.1981 § 936 provides:
   In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

10. This decision by the Court of Appeals of Oklahoma was released for publication by order of the Court of Appeals. As such, the opinion does not have precedential effect but is considered persuasive. *See New Policy on Publication of Appellate Opinions*, adopted

September 24, 1973, West's Oklahoma Court Rules and Procedure 1981–1982, p. 952.

11. The affidavit supporting the request for attorney's fees only showed that 125 hours had been expended in preparation for trial; preparation of plaintiff's proposed finding of facts and conclusions of law; legal research in connection with responses to defendant's motion to dismiss and for summary judgment; research for plaintiff's motion for summary judgment with brief; the taking of seven depositions, three of which involved travel to Dallas, Texas; and actual trial. (I R. 288; Brief of Appellee at 20).

ting disposition of motions on written statements without oral hearings, as implemented by Local Rule 13(a).

Moreover the Oklahoma Supreme Court has identified the key factors to be considered in awarding attorney's fees in *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 661 (Okla.), naming several not covered in the information furnished to the trial court here. *See also Oliver's Sport Center, Inc. v. National Standard Ins.*, 615 P.2d 291, 294–95 (Okla.). The Oklahoma Court pointed to the enumeration of these factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.).[12] Our court has also relied on the same factors. *See Salone v. United States, supra*, 645 F.2d at 879; *Battle v. Anderson*, 614 F.2d 251, 258 (10th Cir.). On remand, an evidentiary hearing should be held for the presentation of evidence on these and other factors the trial court deems proper in determining the award of attorney's fees for the prevailing party.

The judgment is reversed and the case is remanded for further proceedings in accord with this opinion. On remand, the district court should afford a hearing for the presentation of evidence by the parties as to whether an enforceable agreement of sale of the subject property was made at a time entitling the plaintiff-appellee to a commission; and the court should permit introduction of evidence on any further theory for recovery of a commission under the agreement of the parties and state law, if amendment is made to plead such an additional theory for recovery. After a determination is made on the recoverability of a commission, a hearing should be held on the allowance of proper attorney's fees to the prevailing party.

BARRETT, Circuit Judge, concurring:

I concur with Judge Holloway's opinion. However, I am aggrieved that the result reached does seem to permit appellants, Sellers, to enjoy the best of two worlds by virtue of the admission of parol evidence.

It strikes me as unconscionable that Sellers, as party to the agreement of sale, cannot present parol evidence challenging the September 1, 1976, effective date for enforcement purposes (as between parties to the agreement proper) but, nevertheless, may present parol evidence to the contrary against Fulton who seeks enforcement of the brokerage agreement. Be that as it may, I conclude that Judge Holloway's opinion is correct in relation to the admission of parol evidence. Fulton was not a party or privy to the agreement of sale. He was a stranger to that contract.

On remand, in addition to other matters which may be considered, the trial court should be provided the opportunity to determine whether the Sellers are estopped from denying the September 1, 1976, effective date of the agreement of sale vis-a-vis the enforcement by Fulton of the brokerage contract. In making such a determination, the trial court should be presented with evidence indicating the degree, if any, that Fulton relied to his detriment on Sellers' alleged representations that the property had indeed been sold by Sellers prior to December 10, 1976. Judge Holloway's opinion points out that Fulton's first cause of action "... sought ... $72,000 for the failure of defendant to accept a purchaser procured by the plaintiff Fulton ...." The trial court granted Sellers' motion to dismiss this cause of action. I do not know the basis for the order of dismissal. If this court's holding on the admissibility of parol evidence lends substance to reinstatement of the first cause of action, it should be allowed. Fulton may, on remand, wish to present evidence relative thereto in an ef-

12. These factors include: the time and labor required, the novelty and difficulty of the questions, the skill requisite to perform the legal service properly, the preclusion of other employment to the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client and the awards that have been granted in similar cases. (*Id.* at 717–19).

fort to invoke the doctrine of equitable estoppel by virtue of his reliance and detriment suffered.

McKAY, Circuit Judge, concurring in part and dissenting in part:

While I fully concur in the court's opinion as it relates to attorneys' fees, I respectfully cannot concur in its application of the law to the facts of this case.

The plaintiff made a brokerage agreement by which he worked toward a sale while leaving the owner free to compete with his efforts. The compensation was fixed at three percent of the sales price if the owner's competing efforts defeated plaintiff's chance to make the sale. The only question in this litigation is whether the sale ultimately effected comes within the contemplation of the parties to the brokerage agreement. The sticky nuance in this case is that proffered parol evidence excluded by the trial court suggests that a writing fixing the terms of the sale which would satisfy the statute of frauds was not physically signed until after the termination date of the brokerage contract. The excluded testimony does however confirm that the parties to the sale elected to make the effective date of the agreement coincide with the approximate time when they made the oral deal, which fell well within the period of the brokerage contract. Moreover, Mr. Dodds admitted that sometime in October he told the plaintiff to abandon his sales efforts because the property had been sold. The plaintiff also testified:

> Mr. Dodds had rejected our contract that we had because he had a substantially better offer. He came by to tell us that the sale was made, the closing documents were being prepared and he wanted to negotiate the actual amount of commission that J. R. Fulton was to receive because of other provisions in the contract which would change the consideration, the total consideration.

Record, vol. 6, at 22–23.

Nothing in the testimony or proffered testimony suggests that the parties to the sale intended the sale and its closing to be effective on any date other than the one recited in the sales documents. It is clear from the record, both admitted and proffered, that the signed sales agreement ratified and was intended to ratify the sale which occurred within the brokerage contract period. The agreement even related the closing back to September 1st. Record, vol. 2, Pl. Ex. 3, § 6.02. It is clear to me that this sale satisfied the terms of the brokerage agreement which provided that "[t]he term of this agreement shall be from June 10, 1976, to December 10, 1976, unless sold, in which case this agreement may be terminated at the time of closing." Record, vol. 2, Pl. Ex. 2, para. 4.

It is clear that under the general law of Oklahoma the brokerage agreement could not have been enforced unless a written sales agreement satisfying the statute of frauds had been signed. According to the excluded testimony, the sales agreement was not signed until after the expiration of the brokerage contract. However, when the parties relate the written agreement back to the date when they first reached an agreement to enter the sale, and that date is within the term of the brokerage agreement, the seller is bound by that choice not only under the terms of the sale but also under the terms of the dependent brokerage agreement.

Much is made in the briefs of the suggestion that the parol evidence which was excluded would show that some details of the sale were not settled until after the critical December 10th date. It does not appear that the trial court actually weighed the proffered parol to determine whether that assertion is true. Rather it is apparent that the trial court believed that even if the offer of proof were true, it would not alter the result. The trial court's alternative holding was that when a sale is orally made within the term of a brokerage agreement and under the written and enforceable terms of the sales agreement its effective date is within the term of the brokerage agreement, the parties to the sale are bound by that date even as it affects the question of the dependent brokerage agreement.

The trial court was quite correct in concluding in effect that the parties to the sale cannot have it both ways: a sales agreement effective and enforceable by its terms on a date within the term of the brokerage agreement but ineffective and unenforceable on that same date for purposes of the brokerage agreement. If the retroactive date applies for all other purposes to the terms and conditions of the sale, it also applies to the terms and conditions so far as they affect the dependent and related brokerage agreement. The later signed writing merely legitimates under the statute of frauds the sale agreed upon earlier. Since the only issue addressed by the proffered parol is the date of the physical signing of the sales contract, rather than its intended effective date, the trial court was correct in concluding that even if the parol had been admitted the plaintiff was entitled to a commission under the brokerage agreement.

Except for the attorneys' fees issue, I would affirm.