Larry A. GOETZ, et al., Plaintiffs,

v.

James G. RICKETTS, et al.,
Defendants.

Civ. A. No. 82–K–567.

United States District Court,
D. Colorado.

Feb. 10, 1986.

Norman P. Mueller, Haddon, Morgan & Foreman, Denver, Colo., for plaintiffs.

Benjamin I. Sachs, Asst. Atty. Gen., Denver, Colo., for defendants.

ORDER

KANE, District Judge.

There are four matters before me today: (1) plaintiff's objections to defendant's proposed legal access plan and request for consolidation; (2) plaintiff's motion for contempt citation and renewed motion for contempt citation; (3) plaintiffs' objections to the health services plan and request for discovery and an evidentiary hearing; and

(4) plaintiff's motion for attorney's fees and costs, and requesting discovery and/or an evidentiary hearing on related issues.

### 1. *Contempt citation*

On December 19, 1982, I issued an order to show cause as to why defendants should not be held in contempt for violating my June 27, 1982, order. After a hearing in January, 1983, the magistrate took plaintiff's motion for contempt under consideration. In January, 1984, the magistrate recommended that I (1) order defendant to comply with my June 27, 1982, order and with *Marioneaux*, (2) fine Mr. Hickox $500, payable to Russell Billings, the inmate against whom Hickox approved an unwarranted charge in order to get Billings transferred out of Rifle; and (3) order Mr. Hickox to pay 20% of the attorney fees and costs connected with the contempt action.

Both defendants and plaintiffs filed objections to the magistrate's recommendation. I held a hearing on objections in June, 1984, but never ruled on the issue. It is clear from the magistrate's 17 page recommendation that Mr. Hickox violated the court's order and should have been aware of *Marioneaux* and the Department's regulations. Three years, however, have passed since the contempt citation was sought, and the parties have reached settlement on the issues which prompted this lawsuit. Mr. Hickox was removed as the manager of the Rifle facility. As plaintiffs admit, "[t]he pervasive attitude of non-compliance and refusal to comply with the court mandated disciplinary regulations ceased with Mr. Hickox's departure." *See* Motion for award of attorney's fees and costs, page 2. Thus, latter events and the settlement agreement have obviated the need for a contempt citation.

I am aware that the parties, having specifically excluded the contempt issue from their settlement agreement, desire that I rule one way or the other on the contempt issue. In my view, however, the settlement of the case obviates a ruling on the contempt issue. Although a compensatory fine could be imposed, I am not going to do so. It should be clear that plaintiffs have achieved the compliance they sought by bringing this suit. Plaintiffs' motion and renewed motion for issuance of a contempt citation, therefore, are denied.

My order on this issue, however, is strictly a practical decision. It shall not affect the determination of the award of attorney's fees. When the first motion for a contempt citation was filed, compliance obviously was lacking. Defendants will not be able to use my failure to issue a contempt citation in support of their arguments that plaintiffs were not the prevailing parties in this lawsuit.

### 2. *Objections to legal access plan and request for consolidation with Ramos v. Lamm*

Plaintiffs, in accordance with the settlement, have made relatively minor objections to both the legal and medical plans. Plaintiffs have requested consolidation with *Ramos v. Lamm* for the purpose of determining the adequacy of the proposed legal access plan. They point out that the *Ramos* plan is designed as a comprehensive, systemwide approach and that many of its provisions directly affect Rifle inmates.

I see no compelling reason to consolidate these cases. Plaintiffs' request for consolidation is denied. Defendants are directed to submit a modified plan along the lines of the November, 1985, modification to the *Ramos* legal access plan on or before March 28, 1986. Pursuant to the settlement, which allows plaintiffs to challenge the adequacy of defendants' plan within 90 days after receipt of the plan, plaintiffs will have 90 days from the date of submission of the modified plan to renew their objections. At that point, plaintiffs may request that the issues be set for hearing.

### 3. *Objections to the health services plan and request for evidentiary hearing*

Plaintiffs request permission to conduct discovery for three months concerning the health services issues and then set the is-

sue for an evidentiary hearing. The settlement provides that plaintiffs can object to the medical plan within 90 days and that "plaintiffs will be entitled to discovery pursuant to the Federal Rules of Civil Procedure." Plaintiffs' request for permission to conduct discovery on these issues is granted. An evidentiary hearing has been scheduled for one hour at 8:00 a.m. on June 4, 1986.

### 4. *Attorney's fees*

Plaintiffs have moved for attorney's fees pursuant to the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988. That act allows the court to award reasonable attorney fees to a prevailing party, other than the United States, in civil rights actions.

Plaintiffs have also requested an evidentiary hearing on issues related to the fee award. That request is denied, as I am able to resolve all issues raised without such a hearing.

### PREVAILING PARTY

■ Plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). Fees can be awarded to a plaintiff who is only partially successful, especially "where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." S.Rep. No. 94–1011, 94th Cong., 2nd Sess., *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5912. *See also Supre v. Ricketts*, 596 F.Supp. 1532 (D.Colo.1984). Once the plaintiff has been determined to have obtained some of the benefits sought in bringing the litigation, the plaintiff should be construed to be the prevailing party as long as the underlying constitutional claim is substantial. *Battle v. Anderson*, 614 F.2d 251, 258 (10th Cir.1980).

■ As a threshold determination, then, I must decide if plaintiffs are the prevailing party in this litigation. This action challenged the constitutionality of conditions at the Rifle Correctional Facility, including the adequacy of the law library, lack of appropriate opportunities for religious worship, substandard living conditions, substandard medical care, unjust and arbitrary disciplinary procedures.

Plaintiffs claim, and defendants deny, that as a result of this lawsuit, a settlement agreement has been entered into between the parties which provides "extensive, affirmative relief" for plaintiffs. Defendants argue the changes which occurred at the Rifle facility were not a result of plaintiffs' suit, because defendants were already subject to the requirements set out in *Marioneaux v. Colorado State Penitentiary*, 465 F.Supp. 1245 (D.Colo.1979).

Although the conditions at the Rifle facility were not as bad as those in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983), I believe that the state would not have moved unless this action had been brought. As I stated clearly in my June 27, 1982 order:

> [M]uch of what has occurred in this case resembles what occurred during the case of *Ramos v. Lamm*. Due to neglect by the Department of Corrections, the Rifle Correctional Facility, at the time this lawsuit was filed, was a substandard institution virtually run by the inmates. Due to lack of strong administration, a belief had grown among the inmates that their lives were self-regulated.

> \*    \*    \*    \*    \*    \*

> The rules are now being enforced and efforts are being made to upgrade conditions at the facility so that it can be properly operated as an honor camp. These efforts should continue at deliberate speed without interference from this Court. *The situation at Rifle, however, did not get the attention of Dr. Ricketts and few, if any, efforts at improvement were made until plaintiffs brought this lawsuit.* The Court finds that this was caused by three factors—staff short-

ages, budget constraints and a severe lack of leadership from the top on down through the Department of Corrections. Yet, none of these factors can be used as an excuse or justification to circumvent the constitution.

*Goetz v. Ricketts,* 632 F.Supp. 926, 927–928 (D.Colo.1982) (emphasis added). Although defendants deny the advances implemented at Rifle were a direct result of plaintiffs' demands in this lawsuit, I have held and herein affirm otherwise. Plaintiffs are clearly the prevailing party in this civil action.

### TIME

▮ The determination that plaintiff is a prevailing party only brings the plaintiff across the "statutory threshold." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983). The district court must then turn to the task of deciding what fee is reasonable. *Id.*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.; See also Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir.1983). "The first step in calculating fee awards is to determine the number of hours reasonably spent by counsel for the party seeking the fees." *Ramos v. Lamm,* 713 F.2d at 553. "The district court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation. When scrutinizing the actual hours reported, the district court should distinguish 'raw' time from 'hard' or 'billable' time to determine the number of hours reasonably expended." *Id.; See also Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. at 1940. This requirement—that attorneys exercise "billing judgment"—must be met in an application for fees. I must also take into account the knowledge that the average lawyer in a private firm bills between six and seven hours per day for a five day week. *Ramos v. Lamm,* 713 F.2d 546, 552. As I noted in *Ramos,* however, "[d]uring trials and other times of unusual stress the number of billable hours no doubt increases considerably." *Id.* As I also noted in *Ramos,* time spent doing background reading, familiarizing the lawyer with an area of the law, is often included in an applicant's billable hours, and I may reduce the fee award accordingly.

Plaintiffs' counsel Kenneth Canfield requests a total of $85,151.00 for 774.1 hours spent on this case from 1982 to 1985. He also requests $13,739.40 in costs. Defendants object to plaintiffs' documentation of hours, claiming that applicant failed to exercise billing judgment as described in *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40, 50–51, and that the application does not sufficiently break down hours billed. Defendants also argue that plaintiffs' fee request should be reduced by the number of hours worked in excess of the daily norm of 6 to 7 billable hours per day.

When examining hours, I followed the Tenth Circuit's mandate and evaluated each entry to determine the reasonableness of the hours spent on each task. In *Ramos v. Lamm,* the Tenth Circuit held that attorneys must keep "meticulous, contemporaneous time records" which reveal "all hours for which compensation is requested and how those hours were alloted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on." *Id.,* 713 F.2d 546, 553.

I examined the entries for the days when applicant billed in excess of 6–7 hours, and find that, generally, the long days are justified. For example, on and immediately preceding June 15, 1982, applicant billed an average of 12–13 hours per day. This work was in preparation for filing of the motion for a temporary restraining order. It involved conferences with and drafting of affidavits for seven named plaintiffs, work on the motion, telephone conferences, conferences with prisoners regressed from Rifle to Shadow Mountain, Freemont, Bue-

na Vista, and Centennial, and many other hours of investigation and preparation.

It might be reasonable for applicant to put in long, continuous hours in a crunch such as this. *See Ramos v. Lamm,* No. 77–K–1093, slip op. at 5 (D.Colo. June 5, 1985). Long hours can be expected on days which involved travel, investigation, and preparation for motions or hearings.

There are several factors, however, which lead me to conclude that there should be some reduction of the total hours billed by applicant. It is not clear that applicant needed to conduct personally all of the telephone conferences with inmates, conferences with inmates, and correspondence with inmates. More of the investigative tasks, and review of correspondence, could have been accomplished by lower paid attorneys and paralegals, and the billing of time spent on investigation by applicant was excessive. I have reduced the fee award accordingly.

Further, defendant correctly notes that some entries are not detailed enough for review by me, as required by *Ramos v. Lamm,* 713 F.2d 546, 553. For example, applicant does not separate out time spent traveling to a facility, and time spent in actual conference with inmates. It is impossible for me to evaluate carefully applicant's investigative time, as opposed, for example, to time spent traveling, discussing strategy with Mr. Haddon, or researching issues. (*See, e.g.,* entries for 6/7/82, 6/8/82, 6/11/82, 6/12/82, 6/13/82.) Thus, where entries involving some travel time do not demonstrate exactly which hours were allocated to specific tasks, I have denied the award for that entire time.

## HOURLY RATE

Plaintiffs request an hourly rate of $110 for their fee award. "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos v. Lamm,* 713 F.2d 546, 555. Defendants have submitted an affidavit of Denver lawyer David Brougham, which states that billing rates in the Denver community for litigation in the federal courts involving prisoners' rights ranges from approximately $75 per hour to $120 per hour, with the average being about $90 per hour. As noted in *Ramos,* there are no particular skills necessary for an attorney to represent plaintiffs in a civil rights action such as this one. Complex factual and legal issues, such as those which arise in securities and antitrust cases, did not present themselves. Nor are there hundreds of letters of complaint such as I received in *Ramos v. Lamm.* While applicant performed admirably in representing plaintiffs, there is no reason to enhance the average $90 per hour rate of the Denver community. Therefore, an hourly fee of $90 per hour is appropriate in this case.

## REDUCTION OF FEES

The Supreme Court has established that a court must determine whether a fee adjustment is necessary when a plaintiff does not prevail on all claims for relief. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 51. If a plaintiff achieves excellent results, all fees should be recovered, even if he has not prevailed on every contention. On the other hand, if he has achieved only limited success, awarding a fee that compensates him for all hours expended may be excessive, even if his claims were interrelated. *Id.,* 461 U.S. 424, 436, 103 S.Ct. at 1941. "Again, the most critical factor is the degree of success obtained." *Id.*

In this case, plaintiffs prevailed on their overall claims for relief. It is unnecessary to analyze their success in terms of each claim raised, because the settlement agreement was comprehensive and addressed most of the points raised in the lawsuit. Defendants have not pointed to any specific issues raised in the complaint which were not addressed in the settlement proceedings. The award, therefore, will not be reduced because of lack of success obtained in bringing the lawsuit.

I am not deducting the eight hours detailed in defendants' exhibit B to their opposition to the award of fees. These hours, spent, for example, in reviewing, the *Ramos* settlement agreement, were directly related to applicant's work on this case, and do not seem to me to be purely "background" reading.

As in *Ramos v. Lamm*, I must deduct time associated with travel where there is no indication that any work was performed during the journey. Entries for travel time, therefore, are deducted. Where entries include several tasks, including travel, I am denying the award for the entire time.

The award will be reduced by the following amounts for travel:

| | |
|---|---|
| 4.0 | 6/6/82 |
| 13.0 | 6/7/82 |
| 1.8 | 6/8/82 |
| 4.5 | 6/9/82 |
| 11.0 | 6/11/82 |
| 13.0 | 6/12/82 |
| 13.0 | 6/13/86 |
| 3.0 | 7/21/82 |
| 12.0 | 7/22/82 |
| 2.5 | 8/6/82 |
| 6.0 | 9/30/82 |
| 4.0 | 10/2/82 |
| 2.5 | 10/22/82 |
| 11.9 | 12/21/82 |
| 9.3 | 1/18/83 |
| 4.6 | 1/19/83 |
| 4.8 | 1/21/83 |
| 15.0 | 5/29/84 |
| 1.1 | 6/13/84 |
| 3.0 | 1/9/85 |
| .9 | 4/3/85 |
| .8 | 1/31/85 |
| 141.7 HOURS TOTAL | |

Applicant's request for an award covering 774.1 hours is reduced by 141.7 hours to 632.4 hours.

One other source of concern in my examination of total hours billed by applicant is the hours spent working on objections to, and response to defendants' objections to, the magistrate's recommendation on the contempt issue. The following rather large entries were billed:

| | |
|---|---|
| .9 | 1/26/84 |
| 1.5 | 1/27/84 |
| 5.5 | 2/2/84 |
| 5.0 | 2/20/84 |

| | |
|---|---|
| 6.3 | 3/1/84 |
| 5.2 | 3/2/84 |
| 1.2 | 5/10/84 |
| .9 | 5/14/84 |
| 4.5 | 5/16/84 |
| 5.8 | 5/17/84 |
| 4.1 | 5/21/84 |
| 4.0 | 5/22/84 |
| 4.3 | 5/23/84 |
| 7.0 | 5/24/84 |
| 56.2 HOURS TOTAL | |

Although I have discussed the contempt issue above, and warned that the award would not be reduced because I am not issuing a contempt citation, I am cutting this time in half for another reason. I find that the time spent "reviewing the transcript" and preparing the pleadings concerning the magistrate's recommendation, is excessive. (For example, applicant spent 13 hours reviewing the transcript.) I am subtracting 28 hours from the total time before awarding a fee. The time is now further reduced to 604.4 hours due to excessive work on objections to the magistrate's contempt recommendation.

The hours will be further reduced by 16.7 hours for consultation as requested by defendants and described in Exhibit C to defendants' opposition to award of fees. This reduces the net hours to 587.7.

One further reduction shall be made. As stated above, in examining each of applicant's entries for reasonableness, I was struck by some inefficiency in allocating tasks. There are several tasks which I find could have been performed at a lower cost to a client, such as cite checking at the state Supreme Court library, reviewing correspondence from inmates, some of the telephone work, and some of the research and drafting of interrogatories. Accordingly, I reduce the remaining 587.7 hours by 20%, resulting in net time of 470.2 hours.

## COSTS AND EXPENSES

I must rule on several requests for costs:

| | |
|---|---|
| Travel costs | 910.55 |
| Deposition costs | 2,004.15 |
| Witness/mileage fees | 199.00 |
| Expert witness fees | 1,000.00 |

| | |
|---|---|
| Auto expenses | 590.94 |
| Photocopying expenses | 1,213.00 |
| Telephone expenses | 807.24 |
| Paralegal, investigation | 4,768.00 (238.4 hrs. @ $20/hr.) |
| Publication of notice | 1,308.48 |
| Contempt hearing transcript | 477.66 |
| Other miscellaneous | 460.38 |
| TOTAL | 13,739.40 |

■ The Tenth Circuit has held that "expert fees are not allowed under [28 U.S.C.] § 1920," unless the district court finds that expert testimony was reasonably necessary. *Ramos v. Lamm*, 713 F.2d. 546, 559 (10th Cir.1983). I find that the $1,000 sought for the expert witness is not justified, and will be disallowed.

This court generally does not allow costs for deposition transcripts and copies of depositions. Such costs will not be allowed. The transcript from the contempt hearing is disallowed.

■ In the past I have held, and the Tenth Circuit has affirmed, that long distance phone calls, postage, and photocopying are not reimbursable under § 1988 since such costs are normally attributed to overhead. *Ramos v. Lamm*, 539 F.Supp. 730, 753 (D.C.Colo.1982). While I believe that the telephone work conducted was efficient, it is not allowable under present law. Photocopying, likewise, will not be reimbursed.

Travel costs in this case were necessarily incurred and will be allowed, as were witness and mileage fees, and costs of publishing notice of proposed settlement. The 238.4 hours of investigation and messenger work billed by applicant's firm's paralegals will be reduced by 81 hours for time spent in travel, or entries which include travel time and were not broken down. A total of $3,148.00 will be allowed for these 157.4 hours, billed at $20 per hour.

Applicant's request on the other costs is granted.

It is therefore ORDERED that:

1) plaintiffs' motion and renewed motion for contempt citation is denied;

2) plaintiffs' request for consolidation is denied;

3) plaintiffs' request to proceed with discovery on the issue of the adequacy of the health services plan is granted;

4) plaintiffs' request for an evidentiary hearing on the health services issues is granted;

5) plaintiffs' request for attorney fees is granted in part;

It is FURTHER ORDERED that:

1) defendants shall file a modified legal access plan on or before March 28, 1986;

2) plaintiffs will have 90 days in which to object to that modified plan and may request a hearing;

3) an evidentiary hearing is scheduled for one hour, beginning at 8:00 a.m., June 4, 1986, regarding the issues raised by plaintiffs' objections to the health services plan.

4) Judgment is to enter for plaintiffs and against defendants in the amount of $42,318.00 in attorney fees, plus $6,617.35 in costs.